**UNITED STATES of America, Appellee,**

v.

**Michael Peter COLLINS, Appellant.**

**No. 82–1102.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1982.

Decided Oct. 15, 1982.

James M. Rosenbaum, U. S. Atty., Richard E. Vosepka, Asst. U. S. Atty., Kristin A. Siegesmund, Sp. Asst. U. S. Atty., D. Minn., Minneapolis, Minn., for appellee.

Irving Shaw, Irving Shaw, Ltd., Saint Paul, Minn., for appellant.

Before McMILLIAN and ARNOLD, Circuit Judges, and VAN SICKLE,* District Judge.

---

*The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota, sitting by designation.

McMILLIAN, Circuit Judge.

Michael Peter Collins appeals from a final judgment entered in the District Court[1] for the District of Minnesota upon a jury verdict finding him guilty of three counts of unlawful purchase and possession of United States Department of Agriculture food coupons (hereinafter referred to as food stamps) in violation of 7 U.S.C. § 2024(b) (Supp.IV 1980). The district court sentenced Collins to three concurrent three-year terms of incarceration. For reversal Collins argues that the district court erred in (1) denying his motion to dismiss his indictment as being vague and indefinite, (2) denying his motion for a directed verdict of acquittal, (3) failing to give a requested jury instruction, and (4) receiving certain exhibits into evidence. Collins also contends that the district court's imposition of three concurrent three-year prison terms constitutes cruel and unusual punishment in contravention of his eighth amendment rights. U.S.Const. amend. VIII. For the reasons discussed below, we affirm the judgment of the district court.

From July 1980 through October 1981, Curtis Reid, a special agent of the Department of Agriculture, investigated illegal sales of food stamps in Minneapolis, Minnesota. During this time period, Reid sold "marked" food stamps to Ralph Williams on six different occasions.[2] The face value of the marked food stamps sold to Williams on these occasions varied, ranging from $350 to $4,005. On the basis of these sales, Williams was arrested and charged with six counts of illegal acquisition of food stamps. Williams subsequently pled guilty to one count of illegal acquisition of food stamps and was sentenced to 90 days incarceration. The other five counts against Williams were dismissed pursuant to a plea bargain by which Williams agreed to testify against Michael Collins, appellant in this case.

Williams did testify against Collins, both before the grand jury and at Collins' trial. Williams' testimony was that during September and October of 1980 he sold $500 (face value) in food stamps to Collins on two separate occasions. Williams also testified that he sold another $500 (face value) in food stamps to Andre Rattler, who, according to Andre Rattler's testimony, was acting as Collins' agent.

On July 10, 1981, a three-count indictment was returned against Collins for unlawful acquisition and possession of food stamps.[3] Each count charged Collins with a separate purchase of food stamps occurring between September 10, 1980 and October 10, 1980.[4] However, the prosecution offered testimony at trial that Williams made a series of illegal food stamp sales to Collins starting in May 1980 and ending with the transaction alleged in Count II which occurred sometime after October 10, 1980. The prosecution also introduced evidence that (1) Collins redeemed food stamps *after* "The Grocer" (Collins' grocery store in whose name he redeemed the stamps) had depleted its stock of food items and closed its doors to business; (2) food stamps marked by undercover investigator Curtis Reid, which were illegally sold to Ralph Williams, were redeemed by Collins; and (3) "The Grocer's" rate of food stamp redemption as

---

1. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

2. Reid placed markings on the food stamps he sold to Williams so that they could be identified later as they flowed through a chain of possessions until redemption.

3. An earlier indictment was returned against Collins on May 8, 1981, for unlawful acquisition and possession of food stamps. It was dismissed for lack of specificity by order of the Honorable Robert G. Renner, United States District Judge for the District of Minnesota, dated June 17, 1981. The July 10, 1981 indictment was brought to correct the earlier indictment's infirmities. This appeal is concerned only with the July 10, 1981 indictment.

4. Count I alleged that Collins purchased $500 (face value) in food stamps for $375 in cash from Williams in the basement of Collins' Minneapolis restaurant. Count II alleged that Collins bought $500 (face value) in food stamps for $375 in cash from Ralph Williams at Collins' Minneapolis rooming house. Count III alleged that Collins bought $500 (face value) in food stamps for $290 in cash from Andre Rattler in Collins' Minneapolis restaurant.

compared to its total food sales was significantly higher than other stores in the same area.

Collins' defense at trial was that he was approached by Williams to buy food stamps on a few occasions, but that he never bought food stamps for cash from anyone at any time. Collins offered testimony that his redemption rate was not inordinately high given the neighborhood in which his grocery store was located. Further, Collins maintained that he acquired the marked food stamps legitimately in his capacity as a licensed food stamp grocer. Collins suggested that his grocery customers could have purchased the marked food stamps from Williams and then used them to make food purchases at his licensed grocery.

### I. Specificity of the Indictment

█ Collins contends that the indictment is fatally defective because the prosecution's evidence showed that the transaction alleged in Count II of the indictment occurred after the dates specified in the indictment. The law in this circuit is well settled:

> [A] variance between the date in the pleading and the proof is not fatal if the proof shows that the acts charged were committed within the period of the statute of limitations and prior to the date of the [indictment], as long as the date is not a material element of the offense, and the defendant is not prejudiced.

*United States v. Johnson,* 576 F.2d 1331, 1332 (8th Cir. 1978) (per curiam). *See also United States v. Joyner,* 539 F.2d 1162, 1164 (8th Cir.), *cert. denied,* 429 U.S. 983, 97 S.Ct. 499, 50 L.Ed.2d 593 (1976).

█ The date of the illegal purchase of food stamps is not a material element of 7 U.S.C. § 2024(b) (Supp.IV 1980). Nor has Collins shown that his defense was prejudiced by the lack of specificity and variance in the proof of the dates of the transactions. Collins' defense was that he never *at any time* purchased food stamps for cash from anyone. Even if the specific dates were relevant to Collins' defense, there was no prejudice because Collins' attorney had access to Williams' grand jury testimony and

therefore knew the nature and the scope of the prosecution's evidence. *See United States v. Johnson,* 576 F.2d at 1332.

The indictment's general time frame and specificity as to the persons and place involved in each transaction were sufficient to advise Collins of the elements of the offense, apprise him of the charges, and allow him to plead his conviction as a bar to subsequent prosecutions. *See United States v. Young,* 618 F.2d 1281, 1286 (8th Cir.), *cert. denied,* 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980).

### II. Sufficiency of the Evidence

█ Collins' argument that the evidence adduced at his trial was insufficient to support a verdict of guilt beyond a reasonable doubt is, in reality, nothing more than a renewed plea of innocence before this court. Collins' assertion that his testimony refuted the testimony of the prosecutor's witnesses and that his explanation of the facts was at least as plausible as the prosecution's version raises an issue of credibility which was resolved by the jury. In reviewing the jury's resolution of the issue, we must give the prosecution "the benefit of all reasonable inferences favorable to the prosecution's case that logically may be drawn from the evidence." *United States v. Wisdom,* 534 F.2d 1306, 1309 (8th Cir. 1976). Although the prosecution relied heavily upon informer testimony and circumstantial evidence to prove its case against Collins, it was within the jury's prerogative and power to convict Collins on such evidence. *Lenza v. Wyrick,* 665 F.2d 804, 812 (8th Cir. 1981) (circumstantial evidence); *De Rosier v. United States,* 407 F.2d 959, 961–62 (8th Cir. 1969) (informer testimony).

### III. Jury Instruction and Admission of Photographic Evidence

█ Collins also cites as error the district court's failure to give a requested jury instruction on the competency of an informer's testimony. The jury instruction given by the district court on the weight to be given an informer's testimony and the jury instruction requested by Collins' attorney were almost identical versions of the same

model jury instruction.[5] The only difference was that the district court's instruction was more explicit than the requested instruction. We fail to see how the district court's instruction prejudiced Collins' defense. The instruction was proper as given.

■■ Similarly, there was no error below in admitting Government Exhibits 23 and 23A into evidence. Even if the admissibility of these exhibits were in doubt, Collins' attorney waived review by failing to object to their admission. *See* Fed.R.Evid. § 103(a)(1). These exhibits were exemplars of Collins' handwriting and enlarged photographs of the food stamps marked by investigator Reid and redeemed by Collins. A proper foundation was laid for their admission and they were relevant to the issue of Collins' possession of unlawfully acquired food stamps.

### IV. Cruel and Unusual Punishment

■ Collins complains that his sentence of three concurrent three-year terms of incarceration constitutes cruel and unusual punishment when compared to the ninety-day sentence received by Williams for purchasing a far greater amount of food stamps. Variation in sentence between co-actors in a criminal transaction alone, however, does not make the harsher sentence cruel or unusual. *Ray v. United States,* 588 F.2d 601, 604 (8th Cir. 1978). The sentence given to Collins was well under the fifteen-year maximum penalty provided by statute. 7 U.S.C. § 2024(b) (Supp. IV 1980) (five-

year maximum for each count). Collins' sentence, therefore, is neither cruel nor unusual punishment in violation of the eighth amendment. U.S.Const. amend. VIII. *Pratt v. Parratt,* 615 F.2d 486 (8th Cir.), *cert. denied,* 449 U.S. 852, 101 S.Ct. 143, 66 L.Ed.2d 64 (1980).

Accordingly, the judgment of the district court is affirmed.

---

**5.** Collins' attorney requested the following instruction from 1 E. Devitt & C. Blackmar, Federal Jury Practice & Procedure § 17.02 (3d ed. 1977):

The testimony of an informer who provides evidence against the defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against the defendant.

Brief for Appellant at 20. The district court gave the following instruction:

The testimony of an alleged accomplice and the testimony of one who provides evidence against the defendant as an informer for immunity from punishment or personal advantage or vindication must always be examined

and weighed by the jury with greater care and caution than the testimony of an ordinary witness. You, the jury, must decide whether the witness's testimony has been affected by any of those circumstances or by his interest in the outcome of the case, or by prejudice against the defendant, or by the benefits that he has received, either financially or as a result of being immunized from prosecution.

And if you determine that the testimony of such a witness was affected by any one or more of those factors, you should keep in mind that such testimony is always to be received with caution and weighed with great care. You should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

Tr. at 573–74.