STATE of North Dakota, Plaintiff
and Appellee,

v.

Dennis HATCH, Defendant
and Appellant.

Cr. No. 929.

Supreme Court of North Dakota.

Feb. 23, 1984.

Charles J. Gilje, argued, States Atty., Jamestown, for plaintiff and appellee.

Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for defendant and appellant; argued by James A. Reisnour, Jamestown.

ERICKSTAD, Chief Justice.

This is an appeal by the defendant, Dennis Hatch, from a judgment of conviction entered by the District Court of Stutsman County on March 30, 1983, upon a jury verdict finding him guilty of the crime of theft of property, a class C felony, in violation of Section 12.1–23–02(2) of the North Dakota Century Code. Hatch was charged with committing the offense of theft of property by obtaining benefits under the North Dakota Unemployment Compensation Law in an amount exceeding $500 between November 1, 1980, and December 31, 1980, by falsely informing Job Service North Dakota that he was not employed during the week ending September 6, 1980. We affirm the conviction.

Dennis Hatch had been employed by Marvel Steel in Jamestown, North Dakota, until this employment was terminated in March, 1980. Thereafter, Hatch became eligible for benefits under the North Dakota Unemployment Compensation Law,[1]

---

1. *See* Chapters 52–01 to 52–07.1, N.D.C.C. Eligibility for benefits under the unemployment compensation law is governed by § 52–06–01, N.D.C.C., which reads in pertinent part as follows:

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the bureau finds that:
1. He has made a claim for benefits with respect to such week in accordance with such regulations as the bureau may prescribe;

which required him to file, on a weekly basis, a continued claim form with Job Service North Dakota which renews a worker's registration for work and continues a worker's claim for benefits.[2]

Hatch filed a continued claim form in which he claimed benefits for the week ending September 6, 1980. The claim form included questions pertinent to an individual's eligibility and disqualification for unemployment benefits. Hatch answered "No" to the question, "Did you work for any employer(s) or in self employment during the week claimed?" He also left space blank on the claim form for the "name and address of employer(s) and why you are no longer working, total hours, dates worked, and gross earnings." In answering these questions, Hatch failed to mention his employment with a Jamestown contracting firm, Everetts & Associates, Inc. [Everetts], during the week ending September 6, 1980.

Hatch testified he was employed by Everetts during the week ending September 6, 1980, and, although work was available, quit. He was employed 26½ hours at Everetts and earned $123. Hatch assigned the following reason at trial for his omission of information concerning his employment with Everetts:

"I was collecting off Marvel Steel and working at Everetts. I didn't think I ... was collecting off ... Everett. And that I didn't put in that many hours to make a difference ... on my card to write it down."

The continued claim form contained the statement, "I certify that the statements made on this claim are true to the best of my knowledge and belief. I know the law provides *penalties for false statements* made to obtain or increase benefits." Hatch signed this form on September 8, 1980, and thereafter was paid, through a check drawn on the Unemployment Com-

pensation Benefit Fund, his weekly benefit amount of $70. Hatch endorsed the check in space provided thereon above which was set forth, "By signing below, I now CERTIFY, under penalty of law, that any and ALL WAGES earned in the week covered by this check were FULLY reported on my claim."

Hatch thereafter initiated a claim for extended benefits pursuant to Chapter 52–07.1, N.D.C.C. The extended benefit program was established to provide for the payment of extended unemployment compensation benefits to qualified workers who during periods of high unemployment have exhausted their rights to regular benefits under the unemployment compensation law. Section 52–07.1–01, N.D.C.C. Hatch received extended benefits in the amount of $70 per week from the week ending November 1, 1980, to and including the week ending December 27, 1980, totaling $630.

Chris Huber, head of the investigation and collection unit for the Job Insurance Division of Job Service, testified that Hatch's omission was discovered through a computer "cross match" utilizing wage information that had been received from Everetts in April, 1981. On November 23, 1981, the following determination was made by the Job Insurance Division concerning Hatch's claims:

"On your claim for week ending September 6, 1980 you certified you were unemployed with no earnings. There was no mention of your employment with Everetts & Associates, your earnings with Everetts & Associates, or the fact that you quit your employment with that employer during that week.

"You were asked for an explanation and did not respond. There is nothing in the record to show that the work was unsuitable or that your leaving was at-

---

2. He has registered for work at, and thereafter continued to report at, an unemployment office in accordance with such regulations as the bureau may prescribe, ...;

3. He is able to work and is available for suitable work and activity seeking work; ...;

4. He has been unemployed for a waiting period of one week...."

2. *See* § 27–03–04–02, N.D.Admin.Code (1984).

tributable to your employer. It is determined you left your last employment voluntarily and without good cause. Disqualification imposed from August 31, 1980 and until such time as you can show proof of earnings and insured employment of $350.00. It is further determined you misrepresented earnings, employment and separation information that week to obtain benefits to which you were not entitled. Disqualification imposed as indicated below. [11–23–81 to 11–22–82] .... In addition you were overpaid benefits....

"This $630.00 overpayment must be refunded immediately to the North Dakota Job Insurance Division in the form of a check or money order.

"The overpayment was created by improper claim filing. Since you were at fault, waiver through equity and good conscience has been considered and is denied...."

Huber testified that several attempts were made to contact Hatch after the determination was made but no response was ever received.

Disqualification for benefits is governed by Section 52–06–02, N.D.C.C., pertinent provisions of which, in effect on the date of the Job Service determination, provided as follows:

"An individual shall be disqualified for benefits:

"1. For the week in which he has filed an otherwise valid claim for benefits after he has left his last employment voluntarily without good cause attributable to the employer, and thereafter until such time as he:

a. Can demonstrate that he has earned remuneration for personal services in employment equivalent to at least eight times his weekly benefit amount ... and

b. Has not left his last work under disqualifying circumstances.

\* \* \* \* \* \*

"8. For the week in which he has filed an otherwise valid claim for benefits and:

a. For one year from the date on which a determination is made that such individual has made a false statement for the purposes of obtaining benefits to which he was not lawfully entitled. Provided, however, that this disqualification shall not apply to cases in which it shall appear to the satisfaction of the bureau that the said false statement was made by reason of a mistake or misunderstanding of law or of facts without fraudulent intent; ..."

Section 52–07.1–05, N.D.C.C., provides in part that to be eligible for extended benefits the bureau must find, with respect to each week, that an individual "has satisfied the requirement of this chapter for the receipt of regular benefits that are applicable to individuals claiming extended benefits, including *not being subject to a disqualification* for the receipt of benefits." [Emphasis added.]

Hatch was found guilty on December 28, 1982, of the crime of theft of property with a value that exceeds $500, a class C felony.

## I.

Hatch contends that the combined application in this case of the unemployment compensation law and Section 12.1–23–02(2), N.D.C.C., deprives him of due process of law because "the conduct prohibited or permitted is expressed in terms so vague that men may differ as to its application."

The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited or permitted and in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson,* —— U.S. ——, ——, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983). *See also Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193–94, 71 L.Ed.2d 362, 371–72 (1982); *Smith v. Goguen,* 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605, 611–12 (1974); *Grayned v. City of Rock-*

*ford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28 (1972); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115 (1972); *State v. Carpenter*, 301 N.W.2d 106, 110 (N.D.1980). The United States Supreme Court has recently recognized "that the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender v. Lawson, supra* [quoting *Smith v. Goguen, supra*, 415 U.S. at 574, 94 S.Ct. at 1247–48, 39 L.Ed.2d at 613.].

■ Hatch was convicted of theft of property in violation of Section 12.1–23–02(2) which reads:

"A person is guilty of theft if he:

\* \* \* \* \* \*

"2. Knowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat; ...'"

Section 52–06–38, N.D.C.C., which was repealed in 1975, specifically provided a penalty for the making of a false statement or for failing to disclose a material fact to obtain or increase unemployment benefits. A review of the legislative history surrounding the repeal of Section 52–06–38 discloses the Legislature's intent to repeal or amend existing sections of the Century Code in favor of the general criminal sections contained in the new criminal code. The broad definition of theft in the criminal code encompasses all of the former offenses wherein the property of one person is unlawfully taken. The criminal code also contains Section 12.1–11–02 which pro-

hibits falsification of any kind in a governmental matter.[3] Report of the Legislative Council, Forty-Fourth Legislative Assembly, Judiciary "A" 1975.

At the Judiciary "A" Committee meeting on December 10, 1973, the committee discussed Section 52–06–38. Counsel for the committee noted that the conduct proscribed by Section 52–06–38 was covered by Section 12.1–11–02 on false statements and Chapter 12.1–23 on theft. It was then moved, seconded, and carried that Section 52–06–38 be repealed. North Dakota Legislative Council Minutes, Committee on Judiciary "A", December 10–11, 1973.

■ It is evident the conduct of Hatch was within the intended proscriptions of both Sections 12.1–11–02 and 12.1–23–02(2). The United States Supreme Court has characterized as a "settled rule" that when an act violates more than one criminal statute, the government may prosecute under either so long as there is no discriminatory prosecution. "So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied." *United States v. Batchelder*, 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755, 764–65 (1979).

Hatch asserts that the applicable statutory law, as applied to his conviction, is vague and as such permits selective law enforcement. He does not specifically contend, however, that the State exercised intentional or purposeful discrimination in the prosecution of this matter. *See State v. Knoefler*, 325 N.W.2d 192, 197–98 (N.D. 1982); *State v. Gamble Skogmo, Inc.*, 144 N.W.2d 749, 763–65 (N.D.1966).

■ We have said that in determining whether or not adequate warning of the

---

**3.** Section 12.1–11–02, N.D.C.C., reads in part as follows:

"2. A person is guilty of a class A misdemeanor if, in a governmental matter, he:
a. Makes a false written statement, when the statement is material and he does not believe it to be true; [or]
b. Intentionally creates a false impression in a written application for a pecuniary or other

benefit, by omitting information necessary to prevent a material statement therein from being misleading;

\* \* \* \* \* \*

"4. A matter is a 'governmental matter' if it is within the jurisdiction of a government office or agency, ..."

conduct proscribed is given, the court should view the statute from the standpoint of the reasonable man who might be subject to its terms. *State v. Moore*, 286 N.W.2d 274, 279 (N.D.1979), *cert. denied*, 446 U.S. 943, 100 S.Ct. 2170, 64 L.Ed.2d 799 (1980); *State v. Julson*, 202 N.W.2d 145, 152 (N.D.1972). We must therefore determine if Hatch, as a reasonable person subjected to the terms of the theft of property statute, had adequate warning of the proscribed conduct. *State v. Moore, supra.*

In *Moore, supra,* we addressed the issue of whether or not a prosecution for the wrongful receipt of Aid to Families with Dependent Children [AFDC] benefits under Section 12.1–23–02 violated due process on grounds of vagueness. Moore signed and submitted a redetermination of eligibility form to the Social Services Department in which she falsely listed her child as living with her and in her household. We determined that Moore knew, or should have known, from the forms she signed, that she was required to notify the welfare authorities of any change of circumstances which might affect her eligibility, including the absence from her home of the child for whom she was receiving assistance. We so held even though there was no provision in the statutes or in the rules and regulations of the North Dakota social services board which specifically stated that the child had to be living in the mother's home in order for the mother to receive benefits. We concluded that Section 12.1–23–02 is a consolidation of all theft of property offenses, and includes obtaining AFDC benefits to which one is not entitled by knowingly making false statements or representations as to eligibility:

> "The mere fact that the law. [§ 12.1–23–02] or regulations [of the North Dakota social services board] did not specifically point out or prohibit the various different means by which theft is prohibited does not make § 12.1–23–02 vague. It is no more vague than the statute which provides and makes it a crime to intentionally or knowingly cause the death of another human being without going into detail as to how death is accomplished, ..." 286 N.W.2d at 281.

■ As was the case in *Moore*, Hatch was informed at the time he submitted his continued claim that it was unlawful to give false information and that the law provided penalties for false statements. We find no merit in his contention that a reasonable man could not have thought that his voluntary termination of employment at Everetts would have any bearing on his unemployment claim. Contrary to the facts in *Moore*, the unemployment compensation law quite clearly sets forth the requirements for eligibility for regular and extended benefits and circumstances requiring disqualification for these benefits. Hatch made a false statement that subjected him to disqualification for the receipt of regular benefits under Section 52–06–02, N.D.C.C., and which rendered him ineligible for extended benefits under Section 52–07.1–05, N.D.C.C. We believe a reasonable person would have had adequate warning that such conduct would violate North Dakota state law. Thus, we find no due process violation in the prosecution of Hatch for theft of property under Section 12.1–23–02(2), N.D.C.C.

Hatch also contends that the application of Section 12.1–23–02 and the unemployment compensation law violates his right to equal protection under the Fourteenth Amendment of the United States Constitution and Article I, Sections 12, 21, and 22 of the North Dakota Constitution, citing *State v. Carpenter, supra,* as supporting authority.

In *Carpenter, supra,* 301 N.W.2d at 110, we held that a classification in a criminal statute, Section 6–08–16.2, N.D.C.C., which afforded a defense only on the basis of a defendant's ability to pay the amount of a nonsufficient fund check constituted a denial of Carpenter's right to equal protection. At issue in *Carpenter* was the following language contained in Section 6–08–16.2(3):

> "However, if the drawer pays the holder of the instrument within thirty days after receiving written notice of nonpayment by certified mail or by personal

service ..., that fact shall constitute an affirmative defense to a criminal prosecution under this section."

We determined this language constituted class legislation because it imposed burdens upon indigent persons which were not imposed upon others. Applying an intermediate standard of review, we concluded that the classification based upon the ability of a defendant to pay for an affirmative defense to criminal prosecution was not substantially related to the important state interest in preventing the issuance of nonsufficient fund checks.

Hatch argues that he was given the opportunity to make payment of the benefits he received to Job Service; that under Section 12.1–23–05, N.D.C.C., if he had "paid back it would be impossible to grade the offense and impossible to prosecute"; and as he was unable to make payment the application of the statutes constitutes a discriminatory act against an indigent person. We disagree.

■ Hatch's "opportunity" to refund to the unemployment compensation bureau benefits to which he was not entitled is more properly characterized as a statutory liability in that Section 52–06–33, N.D.C.C., provides: "A person who has received any amount of benefits under the North Dakota Unemployment Compensation Law to which he is not entitled shall be liable to refund to the bureau for the fund the amount so paid, ... following a finding that such payment occurred...." Although Hatch is required to refund to the bureau benefits he received to which he is not entitled, there exists no statutory authority in the unemployment compensation law or criminal code which renders such payment an affirmative defense, as was the case in *Carpenter*, or which prevents or provides for the dismissal of a criminal prosecution. Under Section 12.1–23–05, N.D.C.C., theft is a class C felony if the "property or services *stolen* exceed five hundred dollars in value." [Emphasis added]. There is nothing in Section 12.1–23–05 which prevents the grading of a theft offense or precludes a criminal prosecution if

the property stolen is later returned by the thief. We therefore conclude that the application of Section 12.1–23–02(2) and the unemployment compensation law in this case do not constitute class legislation imposing a criminal prosecution burden upon an indigent person which is not imposed upon others.

■ Hatch also contends that his conviction constitutes imprisonment for debt in violation of Article I, § 15 of the North Dakota Constitution because he is required under Section 52–06–33 to refund benefits received to which he was not entitled. The penalty of imprisonment Hatch received, however, is not for failing to make refund pursuant to Section 52–06–33, but for knowingly obtaining the property of another by deception with intent to deprive the owner thereof. This does not constitute imprisonment for debt. *See State v. McDowell*, 312 N.W.2d 301, 307 (N.D.1981); *State v. Goetz*, 312 N.W.2d 1, 7 (N.D.1981).

■ We also find no merit in Hatch's argument that the imposition of criminal penalties and civil sanctions in this case amounts to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article I, § 11 of the North Dakota Constitution.

II.

Hatch contends the trial court erred in denying his motion for judgment of acquittal as the State did not prove beyond a reasonable doubt certain elements of the crime of theft of property as outlined by the trial court in its instructions to the jury.

The trial court instructed the jury that the State was required to prove, beyond a reasonable doubt, "[t]hat said act occurred between November 1, 1980 and December 31, 1980, in the County of Stutsman, State of North Dakota," as alleged in the criminal complaint and information. Hatch argues the only evidence of any criminal act was his signing of the continued claim card on September 8, 1980, and asserts there was no evidence presented of any act com-

mitted on his part during the period between November 1, 1980, and December 31, 1980.

The State is required to prove beyond a reasonable doubt the elements of the offense charged. *State v. Bohl*, 317 N.W.2d 790, 792 (N.D.1982); Section 12.1–01–03, N.D.C.C. The term "element of an offense" is defined by Section 12.1–01–03(1), N.D.C.C., as follows:

"a. the forbidden conduct; b. the attendant circumstances specified in the definition and grading of the offense; c. the required culpability; d. any required result; and e. the nonexistence of a defense as to which there is evidence in the case sufficient to give rise to a reasonable doubt on the issue."

A perusal of Section 12.1–23–02(2) reveals that the exact time of the commission of the offense of theft of property is not a substantive element of proof.

The criminal complaint, Rule 3, N.D.R.Crim.P., serves two distinct purposes: (1) to enable the magistrate to determine if probable cause exists to support a warrant, and (2) to fairly inform the defendant of the charge in order that he may prepare his defense. *State v. Bohl, supra.* We have said that the information, Rule 7, N.D.R.Crim.P., must be specific enough to advise the defendant of the charge against him and to enable him to prepare for trial and to plead the result in bar of a subsequent prosecution for the same offense. See *State v. Lind*, 322 N.W.2d 826, 844 (N.D.1982). Hatch does not contend, however, that there was a failure on the part of the State to apprise him as to the nature and character of the offense charged.

We do not believe the State was required to prove that all elements of the offense of theft of property were committed between November 1, 1980, and December 31, 1980. We hold that unless time is an essential element of an offense, it is not required in a criminal prosecution that the crime be proved to have been committed on the precise date or time period alleged in the complaint or information. It is sufficient that the State prove the commission of the crime charged at any time prior to the filing of the complaint and within the period fixed by the applicable limitations statute.[4] The trial court's instruction worked to Hatch's advantage. The record discloses sufficient evidence to prove that Hatch's offense was charged within the applicable statute of limitations.[5] We conclude, therefore, that even in light of the court's instruction, there was an appropriate conviction.

Hatch argues that the State failed to prove beyond a reasonable doubt that the property stolen exceeded $500 in value so as to constitute a class C felony pursuant to Section 12.1–23–05(2), N.D.C.C. He asserts that benefits received as a result of his false statement of September 8, 1980,

---

4. The rule is similar under the Federal Rules of Criminal Procedure, from which Rules 3 and 7, N.D.R.Crim.P., were adapted. *See, e.g., United States v. Collins*, 690 F.2d 670, 673 (8th Cir.1982) ["A variance between the date in the pleading and the proof is not fatal if the proof shows that the acts charged were committed within the period of the statute of limitations and prior to the date of the indictment, as long as the date of the offense is not a material element of the offense, and the defendant is not prejudiced."]; *United States v. Vahalik*, 606 F.2d 99, 100 (5th Cir.1979), *cert. denied*, 444 U.S. 1081, 100 S.Ct. 1034, 62 L.Ed.2d 765 (1980) ["Within reasonable limits, proof of any date of an offense before the return of the indictment and within the statute of limitations is sufficient."]. *See also* 1 C. Wright, Federal Practice and Procedure: Criminal 2d § 125 at pp. 381–83 (1982).

Our holding is also in accordance with similar decisions from many other states. *See, e.g., State v. Orsini*, 187 Conn. 264, 445 A.2d 887, 892, *cert. denied*, —— U.S. ——, 103 S.Ct. 136, 74 L.Ed.2d 116 (1982); *Carmichael v. State*, 228 Ga. 834, 188 S.E.2d 495, 498 (1972); *People v. Alexander*, 93 Ill.2d 73, 66 Ill.Dec. 326, 442 N.E.2d 887, 889 (1982); *Tapp v. State*, 256 Ind. 422, 269 N.E.2d 367, 369 (1971); *State v. St. Clair*, 418 A.2d 184, 187 n. 4 (Me.1980); *State v. Spade*, 118 N.H. 186, 385 A.2d 115, 117 (1978). *See also* 42 C.J.S. Indictments and Informations § 257.

5. Section 29–04–02, N.D.C.C., provides that an information for any felony other than murder must be filed within three years after its commission.

were only $70. We disagree. Hatch's false statement subjected him to disqualification under Section 52–06–02, N.D.C.C. Being subject to disqualification, Hatch was ineligible, pursuant to Section 52–07.1–05, for the $630 of extended benefits he later obtained.

Hatch also argues that the State failed to prove that he acted with the requisite culpability and specific intent. Section 12.1–23–02(2) requires that the defendant "*knowingly* obtain the property of another by deception ... with *intent to deprive the owner* thereof." The term "knowingly" is defined in Section 12.1–02–02, N.D.C.C., as when a person "engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so." *See also State v. Kaufman*, 310 N.W.2d 709, 713–14 (N.D.1981). The criminal code's definition of "deprive" includes "to withhold property or to cause it to be withheld either permanently or under such circumstances that a major portion of its economic value, or its use and benefit, has, in fact, been appropriated; ..." Section 12.-1–23–10(2), N.D.C.C.

■ In cases challenging the sufficiency of evidence to sustain a conviction we will not weigh conflicting evidence, nor judge the credibility of witnesses; instead, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to determine if there is substantial evidence to warrant a conviction. *State v. Hartleib*, 335 N.W.2d 795, 797 (N.D.1983); *State v. Manke*, 328 N.W.2d 799, 805 (N.D.1982).

■ John Gletne of the Jamestown Police Department testified that he interviewed Hatch in May, 1982, after informing Hatch of his *Miranda* rights:

"[Hatch] stated to me that he ... did not enjoy the employment [at Everetts] and quit the job and failed to notify Job Service of that .... I asked him if he knew that that was against the law and he said yes. And then I asked him why he did

that. And he said, well, you know, to make a little extra money."

Hatch denied making these statements to Gletne. We must assume, however, that the jury believed the evidence which supports the verdict and disbelieved any contrary or conflicting evidence. *State v. Manke, supra*, 328 N.W.2d at 806.

■ Hatch argues that his testimony reveals he is a man of limited education who did not understand the unemployment compensation law and that it was his belief at the time he made the false statement that his employment with Everetts would have no effect on his unemployment claim. A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty. *Manke, supra*. We conclude that Hatch's conviction for theft of property is supported by substantial evidence.

### III.

Hatch next contends that the trial court erred in answering a written question submitted by the jury during deliberations. A note was submitted to the trial judge from the jury which read: "We were wondering if we could see the applications for the extended benefits for the payments of $630 from Nov. 1 to Dec. 31, 1980?" In response to this note the judge answered: "No, you may only consider the evidence that has come to you from the witness stand or by way of exhibit."

In *State v. Klein*, 200 N.W.2d 288, 291–92 (N.D.1972), the trial court sent word to the jury, through the bailiff and allegedly outside the presence and without notice to the defendant and his counsel, that the court could not answer the jury's inquiry concerning the meaning of a statement made by the defendant and that it was a matter for the jury's determination. In determining whether or not such communication between a judge and jury during deliberations constituted reversible error,

and with reference to Section 29–22–05, N.D.C.C.,[6] it was said:

"Thus, under our law, whatever communication takes place between the jury and the court after the jury has retired for deliberation, such as a request by the jury to be informed on any point of law arising in the case or on any other matter, such communication must take place in open court with counsel for both parties and the defendant being present, or at least they must have been notified of the jury's request....

"After a case has been submitted to the jury, the only proper forum for communication between the jury and the judge is in open court, where a proper record may be made of any conversation had. Any such communication should be made in the presence of the entire jury panel, counsel for both sides, and, in a criminal prosecution, in the presence of the defendant." 200 N.W.2d at 292. It was concluded in *Klein, supra,* that it was error for the trial court to communicate with the jury outside the presence of counsel and the defendant, but that such error was not prejudicial to the substantial rights of the defendant.

The communication between the judge and jury in *Klein, supra,* is quite similar to the communication alleged to constitute error in this case. Since *Klein* was decided, we have adopted Rule 43, N.D.R.Crim.P., which generally guarantees to a defendant in a criminal trial the right to be present "at every stage of the trial including the impaneling of the jury and the return of the verdict."

The United States Supreme Court, in construing the federal version of Rule 43 and prior case law, has recently concluded: "When an *ex parte* communication [between judge and juror] relates to some aspect of the trial, the trial judge generally should disclose the communication to coun-

sel for all parties." *Rushen v. Spain,* —— U.S. ——, ——, 104 S.Ct. 453, 456, 78 L.Ed.2d 267, 273–74 (1983). *See also Rogers v. United States,* 422 U.S. 35, 38–40, 95 S.Ct. 2091, 2094–2095, 45 L.Ed.2d 1, 5–7 (1975); *Shields v. United States,* 273 U.S. 583, 588–89, 47 S.Ct. 478, 479, 71 L.Ed. 787, 789–90 (1927). The Supreme Court also recognizes that a violation of Rule 43, Fed. R.Crim.P., may constitute harmless error. *Rushen v. Spain, supra; Rogers v. United States, supra.*

 We conclude it was error for the trial court to communicate with the jury outside the presence of Hatch and his counsel. We believe, however, that where it can be determined beyond a reasonable doubt that substantial rights of the defendant are not affected, such communication is harmless error. *See* Rule 52(a), N.D.R. Crim.P. The trial court's response to the inquiry of the jury regarding Hatch's application for extended benefits operated as a refusal to answer. Our review of the record indicates that no application for extended benefits was ever offered as an exhibit at trial. Thus, we conclude that the trial court's error in communicating with the jury did not affect substantial rights of Hatch and constitute harmless error.

In accordance with the foregoing opinion, we affirm the judgment of conviction.

VANDE WALLE, PEDERSON and GIERKE, JJ., concur.

SAND, Justice, concurring specially.

I concur in most of the rationale by which the result was reached and in the result. But I have reservations regarding the unqualified statements that the exact time when the theft offense was committed is not a substantial element required to be established by the State; and that unless time is an essential element of the offense

---

**6.** Section 29–22–05, N.D.C.C., reads as follows: "After the jurors have retired for deliberation, if they desire to be informed on a point of law arising in the cause, or to have any testimony about which they are in doubt or disagreement read to them, they, upon their request, must be conducted into the courtroom by the officer who has them in custody. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the state's attorney and the defendant or his counsel, or after they have been called."

the State need not prove the precise date or time alleged in the complaint. These statements with no qualification or restriction may be misapplied and may create unwarranted problems.

The theft in this instance involved two phases. The first phase, consisting of the defendant's false statement that he was unemployed during the week ending 6 September 1980, and his signing of the continued claim form, was an essential element of the theft offense because it put into motion the administrative procedures resulting in the subsequent payment of unemployment funds to the defendant, who was not entitled to them. The second phase, in the absence of appropriate intervening factors, is a continuing offense consisting of unlawfully obtaining funds as a result of the false claim.

The first phase, in my opinion, must be established beyond a reasonable doubt, which includes the time when the false statement was made and filed. However, regarding the second phase, the State must only prove beyond a reasonable doubt that the defendant received the funds resulting from the false claims, but the State is not required to establish the precise or exact time the defendant received the money. The results of a false claim can be established through the applicable law, *i.e.*, that the payments were made pursuant to and in accordance with the usual manner prescribed by law and administrative regulations and by the defendant's endorsements of the checks so issued.