1998 ND 101

**CITY OF MANDAN, Plaintiff
and Appellee,**

v.

**Richard B. BAER, Defendant
and Appellant.**

**Criminal No. 970127.**

Supreme Court of North Dakota.

May 20, 1998.

Allen M. Koppy, State's Attorney, Mandan, for plaintiff and appellee.

Thomas M. Tuntland, Mandan, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Richard B. Baer appealed from the Judgment of Conviction of the Morton County District Court issued following a jury verdict of guilty for Driving Under the Influence of Alcohol. We reverse and remand this case for a new trial because the district court erred in excusing a prospective juror during jury selection in the absence of the accused and his counsel.

I

[¶ 2] Richard Baer was arrested and charged with driving under the influence of alcohol. He challenged his administrative license suspension claiming the officer did not have probable cause to arrest him. *Baer v. Director*, 1997 ND 222, 571 N.W.2d 829. The district court reversed the suspension. *Id.* at ¶ 1. The Director of the North Dakota Department of Transportation appealed. *Id.* We reversed the district court judgment because we concluded the officer had probable cause to arrest Baer. *Id.* In this appeal, Baer challenges his conviction for driving under the influence of alcohol on the basis of the proceedings at trial.

[¶ 3] During jury selection for Baer's DUI charge, the court asked several questions of the venire. In an apparent attempt to ascertain whether any of the prospective jurors were convicted felons, the district court asked, "[h]ave any of you lost the right to vote for any reason?" One of the prospective jurors raised his hand. The court continued:

THE COURT: You've lost your right to vote?

JUROR: I don't know if that is still the case.

THE COURT: All right. Mr. Tuntland, [defense counsel,] are there other questions you want me to ask regarding cause at this time?

MR. TUNTLAND: Not of the panel as a whole, Your Honor.

THE COURT: Mr. Koppy[, Morton County State's Attorney]?

MR. KOPPY: Your Honor, I think one of the grounds, if it is still in effect, has anyone been convicted of a felony.

THE COURT: Okay. That question is a question that I'm going to reserve for outside of the presence of the rest of the panel. So we'll deal with that. If you have been convicted of a felony, I would ask you to approach me when we have a recess. Any other questions you would like to ask?

MR. KOPPY: No.

MR. TUNTLAND: No, I don't.

[¶ 4] After a brief recess, the court informed the attorneys he had dismissed one of the prospective jurors. Defense Counsel Tom Tuntland asked for a brief in camera hearing on the record. The record continued in chambers:

> MR. TUNTLAND: At this time, Your Honor, the court noted that [one of the prospective jurors] had been excused. That must have been during the recess.
>
> THE COURT: Yes. When Mr. Koppy mentioned the conviction of a felony,. [the prospective juror] approached me at the recess and I excused him. When I reviewed it I didn't see it, that's why I asked the question about right to vote. When he mentioned that, I did look and the statute no longer required that a person that had been convicted of a felony had to be excused from the panel, you know, but I had excused him, he took off. I wanted to include him again, but he left. So I would have wanted to get him back on the panel and leave him on the panel, but by that time he had gone, at least he was no longer in the jury room. So if you wish to put your objection on the record to his excusal, that is fine. Go ahead.
>
> MR. TUNTLAND: I do object to his being excused, Your Honor.
>
> THE COURT: That is on record and we'll proceed.

[¶ 5] After voir dire was complete, each side exhausted their peremptory challenges. Once the jury was empaneled, sworn, and excused for a recess, the court asked: "Mr. Tuntland, you have made one objection on the record. Aside from that objection, are you satisfied with the jury selection process?"

[¶ 6] Mr. Tuntland replied, "Yes, I am, Your Honor." [1]

[¶ 7] Trial was held, and the jury found Baer guilty of driving under the influence of alcohol.

## II

[¶ 8] On appeal, Baer argues the district court erred when it excused a prospective juror outside the presence of the accused and his counsel. The presence requirement has its roots in the Confrontation Clause of the Sixth Amendment. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, *reh'g denied*, 398 U.S. 915, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970). The Sixth Amendment provides that: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. This constitutional guarantee was made obligatory on the states through the Fourteenth Amendment. *Allen*, 397 U.S. at 338, 90 S.Ct. at 1058 (citing *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)). We have a similar guarantee in our State Constitution: "In criminal prosecutions in any court whatever, the party accused shall have the right ... to appear and defend in person...." N.D. Const. art. I, § 12.

[¶ 9] North Dakota has long recognized the constitutional right of a defendant to be personally present during the whole of a trial. *State v. Schasker*, 60 N,D. 462, 235 N.W. 345 (N.D.1931) (calling in jury after retirement and allowing court stenographer to read evidence from notes in absence of defendant in a felony prosecution was a plain violation of defendant's constitutional rights under the North Dakota Constitution Article I, section 12 (previously, N.D. Const.Art. I, § 13)). The right is not absolute,[2] and may

---

**1.** We recognize the defense counsel did not contradict the state's attorney's incorrect statement that conviction of a felony disqualifies a prospective juror from service. However, defense counsel objected to the dismissal of the prospective juror in the absence of the defendant and the objection was preserved by the trial judge. On this record, we conclude there was no forfeiture of the defendant's right to be present. *See United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993), *opinion on remand*, 62 F.3d 1180 (9th Cir.1995) (distinguishing between waiver and forfeiture and defining forfeiture as the failure to make the timely assertion of a right).

**2.** Early interpretations of the Confrontation Clause held the right of presence could not be waived. *Hopt v. Territory of Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884) (holding it was

be affirmatively waived by the defendant. *See, e.g.*, Rule 43(c)(2), N.D. R.Crim. P. (permitting absence with the written consent of the defendant for pleas of guilty for misdemeanor offenses). *Cf. State v. Ash*, 526 N.W.2d 473, 481 (N.D.1995) (concluding trial court erred in responding to jury communications without the defendant being present, but the error was harmless considering, in part, defense counsel's repeated waiver of defendant's right of presence). The right, too, may be lost by a defendant's unruly and disruptive behavior. *Allen*, 397 U.S. 337, 90 S.Ct. 1057.

[¶ 10] When the constitutional right of presence is violated, it is subject to the harmless error standard for constitutional errors—"harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, *reh'g denied*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967) (holding a reviewing court must declare error harmless beyond a reasonable doubt before a federal constitutional error can be held harmless). *See also Ash*, 526 N.W.2d at 481; *State v. Hatch*, 346 N.W.2d 268, 278 (N.D.1984) (stating error is harmless "where it can be determined beyond a reasonable doubt that [the] substantial rights of the defendant are not affected. . . .").

[¶ 11] In addition to the constitutional guarantee, Rule 43(a) of the North Dakota Rules of Criminal Procedure requires the presence of the defendant "at every stage of the trial including the impaneling of the jury. . . ." Our North Dakota Rule is fashioned after the similarly-worded Federal Rule 43. Compare F.R.Crim. P. 43, *with* N.D. R.Crim. P. 43. The presence requirement embodied in Federal Rule 43 has been interpreted as being broader than the constitutional right. *United States v. Alessandrello*, 637 F.2d 131, 138 (3d Cir.1980), *cert. denied*, 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981) (reasoning Federal Rule 43 is broader than the constitutional right because it "embodies the right to be present derived from the Sixth Amendment Confrontation Clause, the Due Process Clause of the Fifth and Fourteenth Amendments, and the common law privilege of presence"). Despite the purported breadth of Rule 43, it, too, is subject to express limitation. *See, e.g.*, F.R.Crim. P. 43(b), (c); N.D. R.Crim. P. 43(b), (c) (noting certain instances where the defendant's presence is not required).

[¶ 12] Although Rule 43 is contained in our procedural rules, our past decisions view its violation in light of the constitutional require-

not within the power of the accused or his counsel to waive the statutory requirement of presence at trial). For instance, in *Lewis v. United States*, 146 U.S. 370, 371, 13 S.Ct. 136, 136, 36 L.Ed. 1011 (1892), two venire lists were prepared. The trial court directed each side to proceed with its challenges, independent of the other, and without their knowledge. *Id.* The Supreme Court reversed, recognizing "that [the] making of challenges was an essential part of the trial, and that it was one of the substantial rights of the prisoner to be brought face to face with the jurors at the time when the challenges were made. . . ." *Id.* at 376, 13 S.Ct. at 138. In broad terms, the Supreme Court opined that "it is not in the power of the prisoner, either by himself or his counsel, to waive the right to be personally present during the trial." *Id.* at 372, 13 S.Ct. at 137.

A change has occurred since these early, broad interpretations of the presence requirement. In *Campbell v. Wood*, 18 F.3d 662, 671 (9th Cir. 1994), *cert. denied*, 511 U.S. 1119, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994), the Ninth Circuit outlined the change:

"In *Diaz v. United States*, 223 U.S. 442, 455, 32 S.Ct. 250, 254, 56 L.Ed. 500 (1912), the Court distinguished between capital and noncapital

cases and between custodial and noncustodial defendants, stating that the courts

have regarded an accused who is in custody and one who is charged with a capital offense as incapable of waiving the right; the one, because his presence or absence is not within his own control, and the other because, in addition to being usually in custody, he is deemed to suffer the constraint naturally incident to an apprehension of the awful penalty that would follow conviction. The Court held that a defendant who was neither in custody nor charged with a capital offense was free to waive the right of presence by voluntarily absenting himself. *Id.*

This analysis was expanded in *Snyder v. Massachusetts*, 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934), a capital case in which the Court observed that the privilege of presence 'may be lost by consent or at times even by misconduct.' "

Finally, in *Illinois v. Allen*, the Supreme Court observed that an absolute right of presence for the defendant has been expressly rejected. 397 U.S. 337, 342, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353, *reh'g denied*, 398 U.S. 915, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970) (citing *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912)).

ments. *See, e.g., Ash,* 526 N.W.2d at 481 (concluding error of communicating with jury outside of defendant's presence was harmless beyond a reasonable doubt); *State v. Smuda,* 419 N.W.2d 166, 168 (N.D.1988) (noting presence requirement of Rule 43, N.D. R.Crim. P., but concluding defendant's right was violated under the North Dakota Constitution and violation was harmless beyond a reasonable doubt); *Hatch,* 346 N.W.2d at 278 (noting recent adoption of Rule 43, N.D. R.Crim. P., and concluding trial court violated Rule 43 by communicating with jury outside presence of defendant and counsel but violation was disregarded under constitutional standard for harmless error).

### III

■ [¶ 13] We reverse in this case because the district court violated the defendant's constitutional right to be present when a prospective juror was removed from the venire and the State has not persuaded us that the violation was harmless beyond a reasonable doubt.

[¶ 14] From our review of the transcript, it is clear the district court incorrectly thought a North Dakota statute disqualified convicted felons from serving on a jury. Our State law formerly specified "conviction for a felony" as a general reason for challenging a prospective juror for cause. *See* N.D.C.C. § 29–17–34(1) (1991). In 1993, the North Dakota Legislature amended section 29–17–34, N.D.C.C., eliminating "conviction for a felony" as a specifically enumerated challenge for cause. 1993 N.D. Laws Ch. 333, § 1. *See* N.D.C.C. § 29–17–34 (Supp.1997).

[¶ 15] The change was offered as a "clean up" bill to make section 29–17–34, N.D.C.C., consistent with the Uniform Jury Selection and Service Act, N.D.C.C. § 27–09.1–01 to 22. *Hearing on S.B. 2355 Before Senate Judiciary Committee,* 53rd N.D. Leg. Sess., (Feb. 2, 1993) (oral testimony of Greg Wallace, Assistant State Court Administrator for Trial Courts). The Uniform Jury Selection and Service Act is in some respects more stringent than the former provision because instead of providing a ground for challenge it completely disqualifies a prospective juror from service if they have "lost the right to vote because of imprisonment in the penitentiary (section 12.1–33–01)...."[3] N.D.C.C. § 27–09.1–08(2)(e). The disqualification is in effect only during the period of actual incarceration. N.D.C.C. § 12.1–33–03 (reinstating a convicted persons right to vote once released from incarceration). After release from incarceration, many of a convict's civil rights are automatically restored, including the right to serve on a jury. N.D.C.C. § 12.1–33–03. Not all rights are restored upon release from incarceration or parol. *See, e.g.,* N.D.C.C. § 62.1–02–01 (prohibiting a convicted felon from owning or possessing a firearm for a specified period of time after actual incarceration).

■ [¶ 16] In the present case, the district court excused a prospective juror because he was a convicted felon. As we have already noted, convicted felons are no longer subject to general challenge on the sole basis of a conviction. 1993 N.D. Laws Ch. 333, § 1. A convicted felon may be excused from the venire, but the removal must be based on grounds other than conviction of a felony. *See, e.g.,* N.D.C.C. § 29–17–35 (providing for the challenge of jurors for implied or actual bias); *State v. Thompson,* 552 N.W.2d 386, 388–89 (N.D.1996) (holding trial court did not abuse its discretion by declining to dismiss a prospective juror because juror was former client of defendant's law firm). The North Dakota Constitution grants the defendant the right to be present when such challenges are made. N.D. Const. Art. I, § 12. *See* N.D. R.Crim. P. 43(a).

■ [¶ 17] We note, however, that beyond the defendant's right to be present at the arraignment and the time of the plea, Rule 43 is confined to "stages" in a trial. N.D. R.Crim. P. 43(a). "Where a judge acts in his or her administrative capacity to en-

---

3. An indirect disqualification may be implicit in section 12.1–33–01(1)(b), N.D.C.C., if a juror is considered a "public officer." Section 12.1–33–01(1)(b) suspends a felon's right to hold public office during the term of actual incarceration. A majority of this Court held a juror was a public official for the purposes of the workers' compensation statute in *Holmgren v. N.D. Workers Comp. Bur.,* 455 N.W.2d 200 (N.D.1990).

sure that a trial is fair, these events are not 'stages' of a trial." *United States v. Olano,* 62 F.3d 1180, 1191–92 (9th Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 303, 136 L.Ed.2d 221 (1996) (holding ex parte meeting with security officer responsible for escorting defendant was proper administrative act). Thus, before a prospective juror reports for jury service, the district court may excuse the prospective juror outside the defendant's presence for illness, hardship, or other cause. N.D.C.C. § 27–09.1–11(2) (providing prospective jurors may be excused upon a showing of "undue hardship, extreme inconvenience, or public necessity").

■ [¶ 18] Once the selection process in a particular case begins, jury selection is a "stage" of the trial which requires the defendant's presence. N.D. Const. Art. I, § 12; N.D. R.Crim. P. 43(a). The defendant has a substantial right to be brought face to face with and, indeed, to help select the jurors who will determine his fate. *Lewis v. United States,* 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892). This right is not merely for the defendant's benefit. As this case illustrates, presence allows the defendant the opportunity to object to the discharge of prospective jurors and may allow the court to correct an erroneous ruling before it is too late.[4]

■ [¶ 19] Baer was denied his right of presence when the district court excused the prospective juror out of his presence. As we noted in part II of this opinion, a violation of the right of presence may be harmless error. *Ash,* 526 N.W.2d at 481. To dismiss a violation of the presence requirement as harmless, it must be "determined beyond a rea-

sonable doubt that [the] substantial rights of the defendant are not affected . . . ." *Hatch,* 346 N.W.2d at 278. In most cases, the substantial rights of the defendant are affected if the error is prejudicial. *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993), *opinion on remand,* 62 F.3d 1180 (9th Cir.1995). The error is prejudicial if it has "affected the outcome of the district court proceedings." *Id.*

■ [¶ 20] Baer claims the potential for a different jury composition was reversible error because it affected his substantial rights. *See* Explanatory Note, N.D. R.Crim. P. 52 (explaining there are three types of error: harmless, reversible, and obvious). The State counters by claiming the error was harmless because the jury would have been basically the same once the erroneously-excused prospective juror was removed by a peremptory challenge. Both parties ask us to speculate or rationalize as to the level of prejudice resulting from the composition of the jury. We will not engage in that speculation or rationalization. The burden is on the State to persuade us that the error was harmless beyond a reasonable doubt. *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828. The State cannot meet that burden by mere speculation.

■ [¶ 21] Thus, once the defendant shows noncompliance with the presence requirement, he need not show actual prejudice. *Jones v. United States,* 299 F.2d 661, 662 (10th Cir.1962). The burden of persuasion is on the State to show that a violation of the presence requirement was harmless error.[5] *United States v. de Hernandez,* 745

---

4. Here, by the time the district court recognized its error, the prospective juror had left the courthouse. Although there were rectifying procedures the trial court might have followed, we hope our holding will prevent this mishap from occurring again. Thus, we will not speculate as to a proper course of proceeding if similar circumstances occur in the future.

5. In *United States v. Olano,* 507 U.S. at 730, 113 S.Ct. at 1776, the Federal District Court, without objection from the defendants, permitted alternate jurors to attend jury deliberations without an explicit, personal waiver from each defendant in violation of Rule 24(c), F.R.Crim. P. Although

*Olano,* did not deal with an error of constitutional magnitude, we refer to it by analogy because the United States Supreme Court explained who bears the burden of persuasion in the context of Federal Rule 52(a) harmless error as compared with Federal Rule 52(b) plain error:

"When the defendant has made a timely objection to an error and Rule 52(a) applies, a court of appeals normally engages in a specific analysis of the district court record—a so-called 'harmless error' inquiry—to determine whether the error was prejudicial. Rule 52(b) normally requires the same kind of inquiry, with one important difference: It is the defendant rather than the Government who bears the

F.2d 1305, 1310 (10th Cir.1984) (noting while an *ex parte* communication by the trial judge with the jury in violation of Rule 43 may be harmless error, the burden is on the prosecution to show it). Here, we are not convinced beyond a reasonable doubt that the dismissal of a prospective juror outside of Baer's presence was not prejudicial to him.

### IV

[¶ 22] We reverse and remand this case for a new trial.

[¶ 23] SANDSTROM, NEUMANN, MESCHKE and MARING, JJ., concur.

burden of persuasion with respect to prejudice. In *most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial.* ... This burden shifting is dictated by a subtle but important *difference in language between the* two parts of Rule 52: While Rule 52(a) pre-cludes error correction only if the error 'does *not* affect substantial rights' (emphasis added), Rule 52(b) authorizes no remedy unless the error *does* 'affec[t] substantial rights.' "
*Id.* at 734–35, 113 S.Ct. at 1778 (internal citations omitted; emphases retained).