2001 ND 9

**Daniel J. CLARK, Petitioner and Appellant,**

v.

**STATE of North Dakota, Respondent and Appellee.**

**No. 20000296.**

Supreme Court of North Dakota.

Jan. 30, 2001.

Daniel J. Clark, pro se, Bismarck, ND, for petitioner and appellant.

Owen K. Mehrer, Assistant State's Attorney, Dickinson, ND, for respondent and appellee.

NEUMANN, Justice.

[¶ 1] Daniel J. Clark appealed from a judgment dismissing his application for post-conviction relief. We hold it was harmless error, under the circumstances of

this case, when the trial court imposed an enhanced sentence under the special dangerous offender statute without having the jury find the predicate facts supporting the enhanced sentence, and we affirm.

## I

[¶2]   Clark was charged with murder for shooting George Girodengo, on January 17, 1996, after finding him with his wife in their home.   A jury found Clark guilty of manslaughter, a class B felony, under N.D.C.C. § 12.1–16–02. The trial court sentenced Clark to the ten-year maximum period of incarceration for a class B felony under N.D.C.C. § 12.1–32–01(3), and sentenced Clark to an additional five years incarceration as a dangerous special offender under N.D.C.C. § 12.1–32–09(2)(b), for a total sentence of imprisonment of 15 years.   Clark appealed from the judgment of conviction, and this Court affirmed in *State v. Clark*, 1997 ND 199, ¶1, 570 N.W.2d 195.

[¶3]   Clark subsequently filed a petition in the district court for post-conviction relief under N.D.C.C. § 29–32.1–01. He referred to the constitutional rule announced by the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2355, 147 L.Ed.2d 435 (2000), which held a fact used to enhance a criminal sentence beyond the statutory maximum for the crime committed must be decided by a jury beyond a reasonable doubt.   Clark argued the rule should be applied in his case and that this Court should eliminate the five-year enhanced sentence or should remand for a redetermination by a jury on the enhanced sentence issue.   The trial court, applying the rule announced in *Apprendi*, concluded Clark's constitutional rights were satisfied "when the jury was presented jury instructions requesting them to consider [Clark's] use of a firearm in committing the alleged offense."   The trial court determined Clark's enhanced sentence was in compliance with the *Apprendi* rule because the jury had, in effect, found beyond a reason-

able doubt that Clark used a firearm to commit the crime, the predicate fact upon which the enhanced sentence was imposed. The trial court entered judgment dismissing Clark's post-conviction application, and Clark appealed.

## II

[¶4]   The State argues the *Apprendi* decision should not be retroactively applied in this collateral review of Clark's conviction.

### A

[¶5]   Apprendi was indicted under New Jersey law for, among other things, possession of a firearm for an unlawful purpose.   He had fired shots into the home of an African–American family and had made a statement, which he later retracted, that he did not want those family members in his neighborhood because of their race. The indictment did not mention New Jersey's hate crime statute, nor did it allege Apprendi had acted with a racially biased purpose.   Apprendi pled guilty to the firearm charge, but the State reserved the right to request an enhanced sentence under the hate crime statute, and Apprendi reserved the right to challenge any such enhancement.   The trial court then found, by a preponderance of the evidence, the shooting was racially motivated and in violation of the New Jersey hate crime statute.   As a consequence, the court imposed an enhanced prison sentence of 12 years, which was beyond the maximum sentence of five to ten years for the firearm violation.   The question presented to the United States Supreme Court was whether the due process clause of the Fourteenth Amendment required that the facts supporting an increase in the maximum prison sentence be found by a jury on proof beyond a reasonable doubt rather than by a trial judge on a preponderance of the evidence.   The Court answered in the affirmative:

Our answer to that question was foreshadowed by our opinion in *Jones v.*

*United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), construing a federal statute. We there noted that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." The Fourteenth Amendment commands the same answer in this case involving a state statute.

*Apprendi,* 120 S.Ct. at 2355 (citation omitted). Justice Stevens, writing for the Court, concluded:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. . . .
>
> The New Jersey statutory scheme that Apprendi asks us to invalidate allows a jury to convict a defendant of a second-degree offense based on its finding beyond a reasonable doubt that he unlawfully possessed a prohibited weapon; after a subsequent and separate proceeding, it then allows a judge to impose punishment identical to that New Jersey provides for crimes of the first degree based upon the judge's finding, by a preponderance of the evidence, that the defendant's "purpose" for unlawfully possessing the weapon was "to intimidate" his victim on the basis of a particular characteristic the victim possessed. In light of the constitutional rule explained above, and all of the cases supporting it, this practice cannot stand.

*Apprendi,* 120 S.Ct. at 2362–63 (citation omitted). The United States Supreme Court reversed the New Jersey judgment and remanded for further proceedings, but the Court did not address in *Apprendi,* and has not addressed in any subsequent case to date, the issue of retroactive application of the *Apprendi* rule. The decisions of other federal courts provide some guidance whether *Apprendi* should be applied retroactively in the collateral review of a judgment of conviction.

■ [¶ 6] A new rule of constitutional criminal procedure is normally applied retroactively to all cases pending direct review when the rule is announced. *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). There is no apparent dispute that for purposes of retroactivity analysis the *Apprendi* decision established a new rule of constitutional law. *See, e.g., Jones v. Smith,* 231 F.3d 1227, 1236 (9th Cir.2000). However, in *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the United States Supreme Court held a new constitutional rule of criminal procedure is not to be applied retroactively to cases on collateral review of final judgments of conviction unless the rule falls within one of two narrow exceptions: the first, when the new rule places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, and the second, when the new rule is a "watershed" rule of criminal procedure whose non-application would seriously diminish the likelihood of an accurate conviction or which requires the observance of procedures that are implicit in the concept of ordered liberty. *Teague,* 489 U.S. at 307, 313, 109 S.Ct. 1060. Using the *Teague* analysis, the federal courts are divided on the question of whether the *Apprendi* decision should be applied retroactively in cases involving collateral review of a conviction.

[¶ 7] At least two federal district courts have concluded the *Apprendi* rule, requiring a jury to find beyond a reasonable doubt any fact which is the basis for imposing an enhanced sentence beyond the statutory maximum for the crime committed, "is so grounded in fundamental fairness that it may be considered of watershed importance" and should be retroactively applied to cases involving collateral review of a conviction. *United States v.*

*Murphy,* 109 F.Supp.2d 1059, 1064 (D.Minn.2000); *Darity v. United States,* 124 F.Supp.2d 355 (W.D.N.C. 2000). Other federal courts, applying a *Teague* analysis, have concluded the *Apprendi* decision should not be given retroactive application to cases on collateral review. *Jones v. Smith,* 231 F.3d 1227, 1236 (9th Cir.2000); *United States v. Johnson,* 126 F.Supp.2d 1222 (D.Neb. 2000); *West v. United States,* 123 F.Supp.2d 845 (D.Md. 2000); *see also United States v. Pittman,* 120 F.Supp.2d 1263, 1271 (D.Or.2000). The conflict in these federal decisions on the issue of *Apprendi's* retroactive application invites further direction by the United States Supreme Court.

**B**

[¶ 8] Under our Uniform Post Conviction Procedure Act, N.D.C.C. § 29–32.1–01(1)(f), a person can apply for relief from a conviction and sentence upon the ground that "[a] significant change in substantive or procedural law has occurred which, in the interest of justice, should be applied retrospectively." This statute would arguably permit retroactive application of *Apprendi* to convictions on collateral review, if this Court were to conclude "the interest of justice" required it. However, the retroactive application analysis advanced by the United States Supreme Court in *Teague,* 489 U.S. at 309–10, 109 S.Ct. 1060 places substantial emphasis on the finality of convictions:

> Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect....
>
> ....
>
> The "costs imposed upon the State[s] by retroactive application of new rules of constitutional law on habeas corpus ...

generally far outweigh the benefits of this application." In many ways the application of new rules to cases on collateral review may be more intrusive than the enjoining of criminal prosecutions, for it *continually* forces the States to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards. (Citations omitted.)

Clark has not argued any independent state constitutional ground for retroactive application of *Apprendi* to this case. With the split in the federal courts on this issue, we are hesitant to base retroactive application of *Apprendi* upon the statutory language found in N.D.C.C. § 29–32.1–01(1)(f).

**C**

[¶ 9] It is well-established an appellate court need not address questions, the answers to which are unnecessary to the determination of an appeal. *State v. Evans,* 1999 ND 70, ¶ 17, 593 N.W.2d 336. We conclude we do not need to resolve at this time the issue of retroactive application of *Apprendi.* Even if the rule announced in *Apprendi* were to be applied retroactively, under the circumstances of this case, failure to apply it would constitute only harmless error.

**III**

**A**

[¶ 10] Clark's enhanced sentence was imposed under N.D.C.C. § 12.1–32–09, which provides in relevant part:

1. A court may sentence a convicted offender to an extended sentence as a dangerous special offender or a habitual offender in accordance with the provisions of this section upon a finding of any one or more of the following:

a. The convicted offender is a dangerous, mentally abnormal person. The court may not make such a finding unless the presentence report, in-

cluding a psychiatric examination, concludes that the offender's conduct has been characterized by persistent aggressive behavior, and that such behavior makes the offender a serious danger to other persons.

b. The convicted offender is a professional criminal. The court may not make such a finding unless the offender is an adult and the presentence report shows that the offender has substantial income or resources derived from criminal activity.

c. The convicted offender is a habitual offender. The court may not make such a finding unless the offender is an adult and has previously been convicted in any state or states or by the United States of two felonies of class C or above committed at different times when the offender was an adult. For the purposes of this subdivision, a felony conviction in another state or under the laws of the United States shall be considered a felony of class C or above if it is punishable by a maximum term of imprisonment of five years or more.

d. The offender was convicted of an offense which seriously endangered the life of another person and the offender had previously been convicted of a similar offense.

e. The offender is especially dangerous because the offender used a firearm, dangerous weapon, or destructive device in the commission of the offense or during the flight therefrom.

. . . .

4. Upon any plea of guilty, or verdict or finding of guilt of the defendant of such felony, a hearing must be held, before sentence is imposed, by the court sitting without a jury. . . . If it appears by a preponderance of the information, including informa-

tion submitted during the trial of such felony and the sentencing hearing and so much of the presentence report as the court relies upon, that the defendant is a dangerous special offender or a habitual offender, the court shall sentence the defendant to imprisonment for an appropriate term within the limits specified in subsection 2. The court shall place in the record its findings including an identification of the information relied upon in making such findings and its reasons for the sentence imposed.

[¶ 11] The rule announced in *Apprendi* makes clear that before a court may sentence a convicted offender to an enhanced period of incarceration beyond the statutory maximum for the crime committed, a jury, not the court, must find the facts upon which the enhanced sentence is predicated, using the beyond a reasonable doubt standard.[1] The only exception under the rule announced by *Apprendi* is that an enhanced sentence may be based upon prior convictions without a jury finding.

[¶ 12] The primary fact upon which the trial court added five years to Clark's sentence beyond the ten-year maximum penalty for a class B felony manslaughter conviction, was that Clark used a firearm in committing the crime:

The defendant was sentenced as a dangerous special offender because the Court was convinced from all the facts and circumstances of the case that it was appropriate to do so. The defendant's recklessness in the use of the 45 caliber handgun was the essence of the crime. But for the defendant's bringing of the gun to this situation, the death of the victim would never have happened. The Court is convinced that the intent of the legislature, at least in part, in enacting

1. Substantial portions of N.D.C.C. § 12.1–32–09 may not withstand constitutional challenge under the rule announced in *Apprendi*. We urge the legislature to address this important issue and make necessary amendments to bring the statute within *Apprendi's* constitutional requirements.

the dangerous special offender provisions (NDCC 12.1–32–09) is to allow the court to punish more severely those perpetrators who use guns in the commission of an offense. The Court wanted to punish the defendant and deter others who might use a gun in the commission of an offense.

[¶ 13] Clark argues that, in addition to the use of a firearm, before the court can enhance his sentence under N.D.C.C. § 12.1–32–09(1)(e), the jury must find Clark's use of a gun, under the circumstances, shows he "is especially dangerous." We disagree that under subsection (e) any finding other than the use of a firearm in committing the offense is necessary to impose an enhanced penalty. This Court interpreted N.D.C.C. § 12.1–32–09(1)(e) in *State v. Ternes*, 259 N.W.2d 296, 299–300 (N.D.1977):

> We believe it proper to construe § 12.1–32–09, NDCC, to mean that, except as hereinafter noted, the prosecutor must show that a period of confinement greater than that normally provided as a penalty for the particular offense is required to protect the public from further criminal conduct. Because of definitive language in § 12.1–32–09(1)(e), NDCC, we conclude that this showing can be made by mere proof that the defendant used a firearm, dangerous weapon, or destructive device in the commission of an offense or during the flight therefrom.

> We interpret the words of the statute as establishing four categories of special offenders who may be shown to be dangerous, and one category of special offenders who are, per se, dangerous. We cannot say that the Legislature has not the power to do that.

> . . . .

> [T]he Legislature has conclusively stated that a felon who uses a firearm is a dangerous special offender.

[¶ 14] In *State v. Wells*, 265 N.W.2d 239, 245 (N.D.1978), referring to our interpretation of the special dangerous offender statute in *Ternes*, this Court clarified "[t]he one category of offenders deemed, per se, dangerous was, of course, the category of offenders who used firearms, dangerous weapons, or destructive devices in the commission of the offense." Under *Ternes* and *Wells*, it is clear the only predicate fact necessary to enhance a penalty under N.D.C.C. § 12–32–09(1)(e) is that the defendant committed a crime using a firearm, dangerous weapon, or destructive device.

### B

[¶ 15] The United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), declined to rule that all federal constitutional errors require automatic reversal, and instead placed a heavy burden upon the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *See State v. Carmody*, 253 N.W.2d 415, 418 (N.D.1977). Before a federal constitutional error may be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. *City of Mandan v. Baer*, 1998 ND 101, ¶ 10, 578 N.W.2d 559. This is such a case.

[¶ 16] The only predicate fact necessary for the court's imposition of an enhanced sentence was that Clark used a firearm in committing the crime. Clark concedes the use of a firearm in committing the crime. His only defense at trial was that he was acting in self-defense. In *State v. Clark*, 1997 ND 199, 570 N.W.2d 195, 199, we quoted Clark's argument, in which he concedes this fact:

> Clark argues: "This was an intentional shooting. . . . Unless Clark had some right to intentionally pull the trigger, he was guilty of murder. . . . He was either excused by reason of self defense or he was not. . . ."

Although the jury found Clark was not guilty of murder, it found him guilty of the

lesser crime of manslaughter in recklessly causing the victim's death, and his use of a gun in committing this act was never an issue. We conclude, therefore, any error in failing to submit the enhanced sentencing fact issues to the jury for consideration is harmless beyond a reasonable doubt. Harmless error is disregarded by the court. *State v. Mondo,* 325 N.W.2d 201, 203 (N.D.1982); N.D.R.Crim.P. 52(a).

[¶ 17] The judgment of the trial court dismissing, on its merits, Clark's application for post-conviction relief is affirmed.

[¶ 18] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.