2004 ND 112

**STATE of North Dakota, Plaintiff
and Appellee**

v.

**David FLANAGAN, Defendant
and Appellant.**

No. 20030247.

Supreme Court of North Dakota.

June 3, 2004.

Rehearing Denied June 30, 2004.

Lloyd Clayton Suhr, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Chad R. McCabe, Vinje Law Firm, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] David Flanagan appealed from a criminal judgment entered upon a jury verdict finding him guilty of gross sexual imposition. We conclude the trial court committed obvious error in failing to instruct the jury on the elements of gross sexual imposition, but reversal of the judgment is not warranted because this record establishes the error did not seriously af-fect the fairness, integrity, or public repu-tation of the judicial proceeding. We af-firm.

## I

[¶ 2] Flanagan was charged with gross sexual imposition under N.D.C.C. § 12.1–20–03(2)(a) for allegedly engaging in sexu-al contact with a person less than fifteen years old, specifically a thirteen-year-old female identified as L.L. The incident pre-cipitating the criminal charge occurred on July 28, 2002, at a birthday party at a motel swimming pool when Flanagan al-legedly engaged in sexual contact with L.L. Sexual contact is defined under N.D.C.C. § 12.1–20–02(4) as "any touch-ing, whether or not through the clothing or other covering, of the sexual or other inti-mate parts of the person ... for the pur-pose of arousing or satisfying sexual or aggressive desires."

[¶ 3] The State presented evidence L.L. was thirteen years old on July 28, 2002, and Flanagan inappropriately put his hand under her swimsuit bottom, on her hips and the strings of her bikini bottom, on her bikini top over her breast, under the top part of her swimsuit, and on her buttocks. The State also presented evi-dence Flanagan pinched L.L.'s buttocks. Flanagan claimed any touching of L.L.'s "sexual or other intimate parts" which may have occurred was accidental while playing with several kids and picking L.L. and the other kids up and throwing them into the swimming pool. Flanagan claimed any touching of L.L. which occurred was not for the purpose of arousing or satisfying his sexual desires. A jury found Flanagan guilty of gross sexual imposition.

## II

[¶ 4] Flanagan argues the trial court committed obvious error in failing to in-struct the jury on an essential element of

N.D.C.C. § 12.1–20–03(2)(a), which provides "[a] person who engages in sexual contact with another, or who causes another to engage in sexual contact, is guilty of an offense if ... [t]he victim is less than fifteen years old." Before trial, Flanagan indicated he had no objections to the trial court's jury instructions, which outlined the essential elements of gross sexual imposition:

The Information alleges that the defendant committed the offense of Gross Sexual Imposition. The burden of proof resting upon the State of North Dakota is satisfied only if the evidence shows to your satisfaction beyond a reasonable doubt the following essential elements of the offense charged:

1. On or about the 28th day of July, 2002;

2. In Burleigh County, North Dakota;

3. The defendant, David Flanagan;

4. Willfully engaged in sexual contact with another or caused another to engage in sexual contact.

The trial court's instructions did not inform the jury the sexual contact must have been with a person less than fifteen years old as required by N.D.C.C. § 12.1–20–03(2)(a) and is facially incorrect.

[¶ 5] Under N.D.R.Crim.P. 30, if the trial court gives counsel an opportunity to object to proposed instructions, counsel must designate objectionable parts of the instructions and thereafter only the parts so designated are deemed excepted to by counsel. *State v. Olander*, 1998 ND 50, ¶ 9, 575 N.W.2d 658. Because Flanagan did not object to the court's instructions, he failed to adequately preserve this issue for our review under N.D.R.Crim.P. 30, and our inquiry is therefore limited under N.D.R.Crim.P. 52(b) to whether the court's failure to instruct the jury was obvious error affecting substantial rights. *See Olander*, at ¶ 11.

[¶ 6] We exercise our authority to notice obvious error cautiously and only in exceptional circumstances in which the defendant has suffered a serious injustice. *State v. Anderson*, 2003 ND 30, ¶ 8, 657 N.W.2d 245; *Olander*, 1998 ND 50, ¶ 12, 575 N.W.2d 658. In *Olander*, at ¶ 13, we applied the plain error framework from F.R.Crim. P. 52(b) for analyzing claims of obvious error under N.D.R.Crim.P. 52(b). We recognized our rule differs from the federal rule only in the substitution of the word "obvious" for the word "plain," and we said an appellate court may notice a claimed error that was not brought to the attention of the trial court if there was (1) error, (2) that is plain, and (3) affects substantial rights. *Olander*, at ¶ 14. Under that framework, we said once a defendant establishes that a forfeited plain error affects substantial rights, we have discretion to correct the error and should correct it if it " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at ¶ 16 (quoting *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). In *Olander*, at ¶¶ 22, 26, we held the trial court's failure to instruct the jury that the State had the burden of proving beyond a reasonable doubt the defendant did not act in self-defense was obvious error which affected the defendant's substantial rights under the circumstances of that case. We concluded the failure to exercise our discretion to correct the obvious error in that case would seriously affect the fairness, integrity, and public reputation of criminal jury trials, and we reversed the conviction and remanded for a new trial. *Id.* at ¶¶ 27–28, 34.

[¶ 7] In *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), the United States Supreme Court

considered an issue similar to the issue presented in this case. The defendant was indicted for perjury under federal law which proscribed "knowingly mak[ing] any false material declaration" under oath before a grand jury. *Johnson,* at 463–65, 117 S.Ct. 1544. Without objection by the defendant and in accordance with existing federal precedent, the trial court instructed the jury that materiality was a question for the court to decide and it had determined the defendant's statements were material. *Id.* at 464, 117 S.Ct. 1544. After the defendant's conviction but before her appeal, the United States Supreme Court held that materiality of a false statement must be submitted to the jury, rather than decided by the court. *Id.* (citing *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)). In *Johnson,* at 467–68, 117 S.Ct. 1544, the Supreme Court held the failure to submit the issue of materiality to the jury was plain error under the *Olano* framework. The Supreme Court discussed whether that plain error affected the defendant's substantial rights in the context of whether the failure to submit the issue of materiality to the jury was a "structural error." *Id.* at 468–69, 117 S.Ct. 1544. The Court recognized an erroneous definition of reasonable doubt was a structural error that vitiated all of the jury's findings, *see Sullivan v. Louisiana,* 508 U.S. 275, 280, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), but the Court said the failure to submit materiality to the jury could just as easily be analogized to improperly instructing the jury on an element of the offense, which is subject to harmless-error analysis. *Johnson,* at 469, 117 S.Ct. 1544. However, the Court declined to decide whether the failure to submit the issue of materiality to the jury affected the defendant's substantial rights, because the Court concluded that, assuming it did, the failure to submit that issue to the jury did not seriously affect the fairness, integrity, or public reputation of the proceeding under the circumstances of that case. *Johnson,* at 469–70, 117 S.Ct. 1544. In reaching that conclusion, the Court said the evidence supporting materiality was overwhelming and was essentially uncontroverted at trial and on appeal. *Id.* at 470, 117 S.Ct. 1544. The Court said the defendant presented no plausible argument that her false statement under oath was somehow not material to the grand jury investigation and ruled there was no basis for concluding the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 470, 117 S.Ct. 1544. Rather, the Court said a reversal of the conviction would seriously affect the fairness, integrity or public reputation or judicial proceedings, and held no miscarriage of justice would result if the obvious error was not noticed. *Id.*

[¶ 8] In *Neder v. United States,* 527 U.S. 1, 7–20, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the United States Supreme Court held the harmless-error rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), applied to a jury instruction that omits an element of an offense. In *Neder,* at 6, 119 S.Ct. 1827, the defendant had objected to the trial court's instruction that, to convict the defendant of certain tax offenses, the jury need not consider the materiality of any false statements. The Supreme Court concluded the erroneous instruction was harmless error. *Id.* at 7–20, 119 S.Ct. 1827.

[¶ 9] Here, Flanagan did not object to the trial court's instructions, and we conclude his obvious error claim is controlled by the rationale of *Johnson.* The trial court's failure to instruct the jury on the elements of gross sexual imposition under N.D.C.C. § 12.1–20–03(2)(a) for allegedly engaging in sexual contact with a person

less than fifteen years old was obvious error under the framework of *Olander* and *Olano*. But for reasons explained below, it is not reversible error.

[¶ 10] Flanagan claims the disputed facts and arguments presented to the jury established more than one alleged victim in this case and it is impossible to determine whether the jury unanimously agreed as to a particular victim. Our review of the record, however, indicates the only evidence of inappropriate touching presented to the jury involved Flanagan's contact with L.L., who was undisputedly less than fifteen years of age at the time of the incident. Although there was evidence Flanagan was throwing both the victim and another thirteen-year-old girl in the water and some witnesses testified they did not see any inappropriate touching by Flanagan, the only testimony about inappropriate touching pertained to L.L. This is not a case about an erroneous jury instruction shifting the State's burden of proof for a defense to the defendant. *See State v. Johnson*, 2001 ND 184, ¶ 1, 636 N.W.2d 391; *Olander*, 1998 ND 50, ¶¶ 27–28, 575 N.W.2d 658. Rather, the identity of the victim of the inappropriate touching was essentially undisputed at trial, and the evidence focused on whether Flanagan's touching of L.L. was accidental, or for the purpose of arousing or satisfying his sexual desires. On this record, we conclude there is no basis for holding the trial court's erroneous jury instruction seriously affected the fairness, integrity or public reputation of the judicial proceeding. Rather, we conclude the reversal of Flanagan's conviction on this record would seriously affect the fairness, integrity or public reputation of the judicial proceeding. We therefore decline to notice the obvious error.

### III

[¶ 11] At trial, the court sustained Flanagan's objection when the prosecuting attorney asked him, "Is this the first time that you've ever been accused of doing this?" The court denied Flanagan's request for a curative instruction, and instead, the court repeated its instructions about rulings by the court and statements by counsel and by the court. Flanagan argues the court's refusal to grant a mistrial, or give his requested curative instruction denied him a fair trial.

[¶ 12] Flanagan requested the following curative instruction:

As you have already been instructed, during the trial of a criminal action, the attorneys make such objections as they see fit and proper, and the Court rules on those objections. The objections, the reasons for the rulings, and just as importantly, the reasons for the objections are not evidence, and are matters that must play no part in your jury deliberations.

During the course of this trial, however, the assistant State's Attorney asked a question of witness and defendant, David Flanagan, and Mr. Flanagan's attorney objected to the question. This is a grave matter of consideration to the Court, because the Court had earlier told the assistant State's Attorney on two occasions that it would not allow that question to be asked, yet he went ahead and asked the question anyway. Once again, the reasons for that ruling are not for you to consider. The Court considered directing a mistrial in this action, but chose not to do so. However, the Court remains concerned that the unethical actions of the assistant State's Attorney may have unfairly prejudiced you in your deliberations of this case. Therefore, I specifically urge the jury to disregard yesterday's exchange, and to base your decision on the evidence, and

only on the evidence. If any of you feel that you cannot do this, because you have been and remain influenced by the actions of the assistant State's Attorney, then I ask you to indicate this immediately to the bailiff at the onset of your deliberations. You will not be questioned about this, and if you indicate that this matter will influence your decision, despite the instructions from the Court, then the Court will be compelled to order a mistrial of the action, and the case will be tried to another jury at a later date.

[¶ 13] At trial, the following colloquy occurred during the discussion about Flanagan's proposed curative instruction:

THE COURT: Okay. All right. With regard to the requested curative instruction ... I've read it. Did you want to say anything else regarding the requested instruction?

[DEFENSE COUNSEL]: Well just at the time I didn't say much and—didn't say anything but when I went back to the office, I kept thinking well I'd hate to have the jury—and we only get one shot at this, to find [Flanagan] guilty because of something like that and I know you give them an instruction but nothing was done to address that situation and I thought something in fairness should. Maybe not necessarily what I've proposed but I think they should have something. The part I guess—I've had a long discussion with [the prosecuting attorney] this morning and maybe some of what I put in there is uncalled for. I guess some of it was based on conversation we had in passing afterwards that I took maybe wrong but I was under the impression—there was a comment about being another overzealous prosecutor and I thought well if this is what we do downstairs these days and this is a game they do, I guess maybe I

was thinking too much and maybe it was just more deliberate. I perceived it as a deliberate thing and not an act of in the heat of the moment. The more I thought about it, the more serious it seemed to me. I guess the part that gave me heebie-geebies when I put it in there was asking the jury about—right at the bottom of page one, asking them if they felt that they couldn't do this to let you know and I know that's really out of the ordinary and I don't know what else to do and I put it in there. I certainly would like a curative instruction of some sort.

. . . .

[THE COURT]: My concern with giving this instruction is telling the jury not to think of a pink elephant. I'm not sure that the jury paid a lot of attention to that. I don't know. I mean it could have been a big deal to them, it maybe just was a passing thing that they paid no attention to. My concern is if I give this instruction, then they're going to spend a lot of time talking about something that they may or may not have talked about otherwise.

[DEFENSE COUNSEL]: Is that an instruction that comes up now or is that something—yeah, you did in the opening, right?

THE COURT: What's that?

[DEFENSE COUNSEL]: About the rulings and objections?

THE COURT: Yeah, mm hmm.

[DEFENSE COUNSEL]: Maybe if you just gave that one again.

THE COURT: I could do that. I'd agree to do that. Otherwise like I say, I'm just concerned that it would overemphasize something.

[DEFENSE COUNSEL]: Just preface it, you know, because a number of objections were made yesterday and rul-

ings made, I feel it's necessary to repeat this instruction.

THE COURT: Right and I might even just add to that say—just reiterate that they're to decide the case solely on the evidence before them. I'll do that.

[DEFENSE COUNSEL]: All right. Thank you.

[¶ 14] We conclude Flanagan's acquiescence in the trial court's curative instruction constitutes a waiver of this issue and precludes him from raising this claim as obvious error. *See Olander*, 1998 ND 50, ¶ 14, 575 N.W.2d 658 (stating "[f]orfeiture is the failure to timely assert a right, while waiver is the intentional relinquishment of a right, and F.R.Crim. P. 52(b) applies only to 'forfeited' and not to 'waived' errors.").

## IV

 [¶ 15] Flanagan argues he was denied his right to a fair trial under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and *City of Mandan v. Fern*, 501 N.W.2d 739 (N.D.1993), because the State used gender-based peremptory challenges to eliminate prospective male jurors from the jury and to seat twelve female jurors. The State responds Flanagan failed to object at trial to the procedure for selecting the jury, and he may not raise this issue for the first time on appeal. The State argues even if Flanagan did preserve this issue for review, he did not establish the State's peremptory challenges were based solely on gender.

[¶ 16] During jury selection, the State used peremptory challenges to remove five males and one female from the jury, and Flanagan used peremptory challenges to remove five males from the jury. As a result, a jury of twelve females was chosen to decide the case. Thereafter, in response to a question from the trial court, Flanagan indicated he had no objection or

problem with the jury selection process, and he raised this issue for the first time on appeal. We decline to consider this issue because issues not presented to the trial court cannot be considered for the first time on appeal. *State v. Steffes*, 500 N.W.2d 608, 615 (N.D.1993) (refusing to consider issue about gender-based peremptory challenges against male jury panel members). Moreover, on this record, we conclude Flanagan's claim does not rise to the level of obvious error. N.D.R.Crim.P. 52(b).

## V

[¶ 17] We affirm the judgment of conviction.

[¶ 18] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.