2007 ND 148

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Benjamin NEWMAN, Defendant and Appellant.**

No. 20060294.

Supreme Court of North Dakota.

Sept. 5, 2007.

Cynthia Mae Feland (argued), Assistant State's Attorney, and Richard James Riha (appeared), State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Robert Wade Martin, North Dakota Public Defenders' Office, Minot, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Benjamin Newman appealed from a criminal judgment entered upon a jury verdict finding him guilty of class AA felony murder, class A felony attempted murder, class B felony endangering by fire, and class C felony violation of a domestic violence protection order. The court sentenced Newman to incarceration for life without parole on the murder conviction, 20 years incarceration on the attempted murder conviction, 10 years incarceration on the endangering by fire conviction, and five years on the conviction for violation of a domestic violence protection order. We hold Newman was not denied his right to a fair and impartial jury. We further hold Newman waived his objection that he was denied his right to be present at each critical stage of the trial proceedings, and we affirm the criminal judgment.

I

[¶ 2] Gail Delorme obtained a domestic violence protection order prohibiting Newman from coming within 200 yards of her residence. In violation of that order, Newman attempted to cause Delorme's death by intentionally starting a fire at the apartment building where she resided in Bismarck. That fire resulted in the death of a tenant who was in the building at the time of the fire.

[¶ 3] Newman's issues on appeal relate to alleged misconduct by a juror using her cell phone during breaks on the second day of trial and possibly sending text messages during the trial itself. This was brought to the attention of the trial judge, who held a lengthy in-chambers conference, with Newman, his trial counsel and the prosecuting attorneys present, to address the juror misconduct. The in-chambers meeting included the following discussion:

> MR. RIHA: Your Honor, we heard yesterday after the trial that one of the jurors was using a cell phone during breaks and may be text messaging during the breaks and during the—possibly, during the testimony. And that's a concern to all of us.
>
> . . . .
>
> MR. BALABAN: More than the undivided attention aspect, as well, Your Honor, I'm concerned with outside influences. I mean, the Jury is supposed to be admonished not to read newspapers, magazines, and television reports. And as the Court is aware, and as everybody

in the room is aware, this has been on the news quite a bit and, I don't know. I guess, what I would reiterate what concerns me is not so much the outgoing information from the juror, but more the incoming information of what this juror may be receiving from outside source that may change the way they are viewing the evidence, or if they're getting some outside information that is going to add to their knowledge of the case that they wouldn't have gotten from the evidence presented.

. . . .

THE COURT: . . . I will call her in and excuse her, ask her about—tell her about the concerns and excuse her, and then we'll seat the alternate. . . .

MR. BALABAN: . . . I agree, she should be dismissed. She's not an appropriate juror in this case. But as far as any other record we need to make or if she has said anything to the other jurors back in the break room is a big source of concern for me as far as contamination of the other jurors, as people do talk.

. . . .

And, I guess, one way, you know, and I don't know if it's the appropriate way or not appropriate way or not for the Court to approach the Jury and ask, you know, after this juror is dismissed and say, has there been any conversation about any outside influences and have these other jurors say, yeah, she was trying to talk to us about stuff or, no, she wasn't trying to talk to us about stuff, just to be sure that we've got a clean Jury still.

. . . .

THE COURT: All right. I suppose what I could I do is bring in Ms. Quinn by herself to talk to her and dismiss her. And then bring the other jurors in groups of, I could fit six around the table, six into my chambers. I don't

want to have that conversation in open Court. I could bring them in in groups of six and just ask them as a group. And I expect that exchange might be very short. I ask the question, they give me the answer, and I'll have the bailiffs bring in the other six.

Would there be any objections to that method? Mr. Balaban or Mr. Glass?

MR. BALABAN: I won't have an objection. I'm not sure where the presumption lies. The presumption is that they're tainted or that they're not?

MR. RIHA: I think there is a presumption that they follow the Court's admonishment.

MR. GLASS: Yeah.

MR. BALABAN: I'm talking about—

THE COURT: That would be the presumption.

MR. BALABAN: I agree with that. But I think if there was information, you know, from this conversation that came up as far as what Ms. Quinn was doing on her cell phone, does that—I don't know where the presumption—what does that do to that presumption?

THE COURT: If the information involved this case, particularly?

MR. BALABAN: Yes.

THE COURT: If it doesn't involve this case, I think there is no presumption.

MR. BALABAN: I would agree.

Following the in-chambers meeting with the parties, the court called the offending juror into chambers to dismiss that juror:

THE COURT: Let the record reflect we're in chambers with Juror Ms. Quinn. And just Juror Ms. Quinn and I are present in the chambers.

Ms. Quinn, it's come to my attention that the use of your cell phone has been of concern to the parties, to the counsel.

They have been concerned that they—that you have been text-messaging during the trial or during the breaks.

JUROR QUINN: No, not at all.

THE COURT: And that perhaps you have received information regarding this case or conveyed information regarding this case.

JUROR QUINN: I talked to my friend, Allie, yesterday. But we talked about her friend, Joshua, from Fargo. That's all we talked about, was that. And that was on the lunch break.

THE COURT: All right. There was also text-messaging going on during the afternoon break, as I understand it?

JUROR QUINN: Yep, my friend, Jana, text-messaged me. I just texted her back. And my friend, Kelsie, I had to call her really quick.

THE COURT: All right. There is a concern, and we have to protect the jury system in order to make sure that all of the evidence that is and all of the information brought into the jury room comes from the Court, from the witnesses and the evidence that's brought in. There is a concern expressed among the attorneys and the Court about your use of the cell phone, and we have decided that we're going to excuse you from your Jury duty.

JUROR QUINN: Okay.

[¶ 4] The Court then called the first group of six jurors into chambers and had the following discussion:

THE COURT: All right. I wanted to just take a moment to visit with you. I have just decided to release Juror Quinn from her services as a Juror, and I wanted to inquire of you whether anyone has discussed this case in front of you so that you have heard any other—any other information other than what you have heard in the courtroom. No?

(All members shake their heads negatively.)

THE COURT: I'm seeing that all of you have said "no".

That's all I needed to ask you.

The court then summoned the remaining jurors into chambers and had a similar discussion:

THE COURT: All right. Thank you for meeting with me. I have—I wanted to inform you that I have decided to release Juror Quinn from her duties as a Juror. I wanted to just advise you of that, and then ask whether anyone has discussed this case or any elements of the case in front of you. You know, I have admonished you not to discuss it, yourself. I'm wondering whether you overheard any conversations regarding this case outside of the courtroom.

(All members shake their heads negatively.)

THE COURT: Everybody has indicated no. All right. That's all I needed to ask you. Thank you. You can return to the Jury room, and we will start Court in a few minutes.

Thereafter, the trial proceeded with no further incidents involving the jury.

## II

■ [¶ 5] On appeal, Newman argues, "[t]he lower court failed to excise the taint of the jury impaneled in the case below, caused by a juror's use of her cell phone and text messaging during the course of the trial, and did not preserve [Newman's] constitutional right to a fair and impartial jury on his trial for homicide and related criminal charges."

■ [¶ 6] "Persons accused of crimes have a right ... to a trial by an impartial jury." *State v. Smaage*, 547 N.W.2d 916, 919 (N.D.1996). We explained the genesis of that right in *State v.*

*Fredericks,* 507 N.W.2d 61, 64–65 (N.D. 1993):

> A criminal defendant's right to an impartial jury trial under the Sixth Amendment requires the selection of the jury from a representative cross section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). The Fourteenth Amendment makes the provisions of the Sixth Amendment binding upon the states. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Although the North Dakota Constitution's guarantee of the right to a jury trial does not explicitly require an impartial jury, *see* N.D. Const. art. I, 13, we would read the Sixth Amendment's impartiality and fair-cross-section requirements into our state constitution.

[¶ 7] During the trial, jurors are prohibited from communicating among themselves or others "on any subject connected with the trial." N.D.C.C. § 29–21–27. Under N.D.C.C. § 29–21–28, the court has a duty, upon each adjournment of the court, to admonish the jury "that it is their duty not to converse among themselves [or] with anyone else on any subject connected with the trial ... until the case is finally submitted to them." *See State v. Myers,* 2006 ND 242, ¶ 15, 724 N.W.2d 168.

[¶ 8] At the beginning of the trial, in open court, the trial court informed the jurors that they must "refrain from discussing this case with anyone until it's been finally turned over to you." In its opening instructions, the court further admonished the jury:

> From time to time during the trial we may take a recess. Do not discuss the case among yourselves or permit anyone to discuss it with you or in your presence. Do not form or express an opinion on the case until it is finally submitted to you.

[¶ 9] Newman asserts the trial judge's examination of the juror who was using her cell phone "did not go far enough, or in depth enough, to effectively excise the taint to the jury that [she] engendered through her unauthorized communication with other persons outside the confines of the jury room and/or trial" because "the record before the court does not establish that the unauthorized communication was unrelated to '... any subject connected with the trial.'" During the in-chambers discussion between the court and the offending juror, that juror said her discussion on the cell phone was about a friend of the person to whom she was talking and "[t]hat's all we talked about." She said she sent a text message response to one friend and made a "really quick" call to another friend. While the court could have further probed this juror about the content of her communications, there is no indication that there was any discussion about the trial during the cell phone usage. This juror was excluded, and the remaining jurors were questioned by the court. All of those jurors indicated they had not heard or received any information about the case other than what was presented to them in the courtroom.

█ [¶ 10] Although the law with regard to jury conduct must be strictly followed, an appellate court will not set aside a verdict merely on a "whimsey or fanciful notion" that prejudicial misconduct occurred. *Fischer v. Knapp,* 332 N.W.2d 76, 79 (N.D.1983). There is no evidence that any juror sitting on the panel which decided this case heard or received any information about the case outside the courtroom. There is no evidence this was not an impartial jury. We conclude, under these circumstances, Newman was not denied his right to a fair and impartial jury.

## III

[¶ 11] Newman asserts he had a constitutional right to be present when the court questioned the offending juror and the other members of the jury panel. Newman claims his exclusion from the examination of the juror and the remaining panel violated his constitutional due process rights to be present at each and every critical stage of the proceeding, and is thus an obvious error of the trial court.

[¶ 12] A defendant has a constitutional right to be present in the courtroom at every stage of the trial. *State v. Klose*, 2003 ND 39, ¶ 32, 657 N.W.2d 276; *Hill v. State*, 2000 ND 143, ¶ 16, 615 N.W.2d 135. However, that "right is not absolute, and may be affirmatively waived by the defendant." *City of Mandan v. Baer*, 1998 ND 101, ¶ 9, 578 N.W.2d 559 (footnote omitted); *see also* N.D.R.Crim.P. 43(c). Both Newman and his counsel were present during the in-chambers discussion to determine how the court should deal with the juror who had been observed using her cell phone during the trial proceedings. The court stated the juror would be dismissed and the remaining jurors would be questioned by the judge. Newman's counsel, with Newman present, affirmatively stated he had no objection to that procedure. Therefore, both Newman and his attorney acquiesced in and fully approved, without objection, having the trial judge exclude that juror after talking with her and then having the court, without others present, inquire of the remaining jurors whether they had received any information about the case outside the trial court proceedings.

[¶ 13] Assuming Newman had a right to be present during the court's in-chambers questioning of the jurors, Newman knowingly and affirmatively waived that right when he agreed to the procedure utilized by the court. A party cannot challenge as error a ruling or other trial proceeding invited by that party. *State v. Grager*, 2006 ND 102, ¶ 7, 713 N.W.2d 531 (no reversible error where a litigant opens the door and invites error).

## IV

[¶ 14] We hold Newman was not denied his right to a fair and impartial jury. We further hold Newman waived his right to be present during the court's questioning of the jury panel. We, therefore, affirm the criminal judgment.

[¶ 15] GERALD W. VANDE WALLE, C.J., STEVEN L. MARQUART, D.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

[¶ 16] The Honorable STEVEN L. MARQUART, D.J., sitting in place of KAPSNER, J., disqualified.