2017 ND 165

**STATE of North Dakota, Plaintiff and Appellee**

**v.**

**Eybon Avyon WATKINS, Defendant and Appellant**

No. 20160392

Supreme Court of North Dakota.

Filed 7/12/2017

Julie A. Lawyer, Burleigh County Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Jackson Lofgren, Bismarck, ND, for defendant and appellant.

VandeWalle, Chief Justice.

[¶ 1] Eybon Watkins appealed from a criminal judgment entered after a jury found him guilty of robbery and the district court imposed upon him a four-year mandatory minimum sentence as an armed offender. Although the court did not instruct the jury to make a finding whether Watkins possessed a firearm during the robbery, we affirm because Watkins invited the error.

I

[¶ 2] Watkins was charged with robbing a hotel in Bismarck during August 2015. The charge was a class B felony under N.D.C.C. § 12.1–22–01(2), which applies "if the robber possesses or pretends to possess a firearm, destructive device, or other dangerous weapon, or menaces another with serious bodily injury, or inflicts bodily injury upon another, ..." The State sought a four-year mandatory minimum sentence under N.D.C.C. § 12.1–32–02.1(2)(a), which applies "only when possession of a dangerous weapon, explosive, destructive device, or firearm has been charged and admitted or found to be true in the manner provided by law, ..."

[¶ 3] Before the trial started, the State informed the district court:

MS. LAWYER [Prosecutor]: ... In order for the mandatory minimum to apply, since the State is alleging that he was in possession of a firearm, the jury has to make a finding that he was in possession of a firearm. So I would suggest that after we have the guilty—not guilty/guilty, that we have a further paragraph that says if you find the de-fendant guilty, something along the lines of, do you further find that the defendant was in possession of a firearm at the time of the offense? Yes or no. And have them check that as well. Because I believe that the case law says that the jury has to make a beyond a reasonable doubt finding for that factor to apply for the mandatory minimum to apply, but, again, that's just something we can think about for the next couple days.

The court said it appreciated the "heads up" and gave the jury a preliminary instruction on the essential elements of the offense which included the requirement that the jury find "[i]n the course of committing the theft the defendant willfully possessed or pretended to possess a firearm, destructive device, or other dangerous weapon."

[¶ 4] During the trial, the State presented testimony of the hotel's night auditor who was the only eyewitness to the robbery. She testified that a man wearing a mask, glasses and gloves approached her "holding something at me wrapped in a garbage bag." The night auditor thought the man had a gun because of the way he was pointing, but did not actually see a gun in his possession.

[¶ 5] At the close of the evidence, the district court and the parties discussed the final jury instructions and the State's request for a specific verdict question whether the defendant used a firearm for the mandatory minimum sentence to apply. The court said it did not believe a second question was necessary on the verdict form because "[i]t seems to me they already have to find that in order to find him guilty." The discussion continued:

MS. LAWYER: ... I'm fine with leaving the question out if the Court is comfortable with that and I'm comforta-

ble with that interpretation of that case law as well.

THE COURT: I'm fine either way. It's just that when—I didn't do a lot of research, but I just looked at the annotations. And it seems like the annotation or the primary case at least where they talked about making a specific finding was a reckless endangerment case and that wouldn't have the element—the essential element that there is in this case. So I don't know if the question—I guess again the first question, is the question necessary or not and if it is how do we phrase it?

MR. BOLINSKE [Defense Counsel]: Well, I guess my position is that it's an alternative element. I mean, finding a firearm—if that were the only element, then this minimum mandatory would certainly apply if the statute was not in the alternative element and—so I guess I'm ambivalent because—if the Court wants to leave the question off, that's fine by me.

THE COURT: I think I will. I think it's confusing. For one thing because if I was a jury, which I've never done, it seems to me that I would look at that and I would say, well, didn't I already make this finding in the essential elements.

MS. LAWYER: And it sounds like the Defense is basically stipulating that if they do find him guilty they are finding that that mandatory minimum would apply.

MR. BOLINSKE: I'm not—I will not— that's not accurate. I won't stipulate to that because that's a debate for later, but if there's no question on the verdict form, that's fine by me.

The court instructed the jury in accordance with the preliminary instruction and did not include a question whether Wat-

kins was in possession of a firearm. The jury found Watkins guilty.

[¶ 6] Immediately after the jury was excused, Watkins' attorney informed the district court:

MR. BOLINSKE: . . . We were going to ask for a PSI and then the issue that we talked about, whether the minimum mandatory applies. I guess I'd like to brief that issue because to me that's complicated. Our position was that there needed to be a special finding that a firearm was used to trigger the minimum mandatory and I think they needed to make according to the case law— and know that—I thought the State was going to ask for a specific finding to be included on the verdict form. That wasn't included. Now we have two alternative elements. We have a firearm and a pretend firearm. That doesn't trigger the minimum mandatory statute, so I'd like to at least try to figure that out before we do that.

[¶ 7] At the sentence hearing, the parties and the court continued to discuss whether the mandatory minimum sentence could be given and Watkins' attorney explained:

MR. BOLINSKE: . . . I understand we didn't request that a separate place be— separate spot be placed on the verdict form to determine that, but in my opinion and my advice was that that would be a bad idea because that would allow the jury to make a finding. And if they don't make a finding, we submit the minimum mandatory could never apply. . . . [I]t's a strategic move to not have that on the verdict form. . . .

The court imposed the mandatory minimum sentence of four years.

## II

[¶ 8] Watkins argues that the district court erred in applying the mandatory minimum sentence for armed offenders

in this case because the jury was not required to find that he possessed a firearm, and this error rises to the level of obvious error under N.D.R.Crim.P. 52(b).

[¶ 9] In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held that a fact used to enhance a criminal sentence beyond the statutory maximum for the crime committed must be decided by a jury beyond a reasonable doubt. *See also Clark v. State*, 2001 ND 9, ¶¶ 3, 5, 621 N.W.2d 576. In *Alleyne v. United States*, —— U.S. ——, 133 S.Ct. 2151, 2155, 186 L.Ed.2d 314 (2013), the Supreme Court extended the reasoning in *Apprendi* and held that any fact leading to the imposition of a mandatory minimum sentence must also be found by a jury beyond a reasonable doubt.

[¶ 10] The case to which the district court was referring during discussions with counsel was *State v. Clinkscales*, 536 N.W.2d 661 (N.D. 1995). In that case, the defendant was convicted of class B felony robbery while armed with a BB gun resembling a 9mm semiautomatic pistol. *Id.* at 662–63. The defendant argued the court erred in refusing to instruct the jury on class C felony robbery, a lesser included offense, because the State did not prove the BB gun was capable of expelling a projectile, a necessary element to constitute a "dangerous weapon" for purposes of class B felony robbery. *Id.* at 663–64. This Court held there was no error in failing to instruct the jury on the lesser included offense because a person who uses an unloaded or toy weapon during a robbery is subject to an aggravated penalty based on the heightened fear the presence of a weapon creates in the victim. *Id.* at 665. This Court also rejected the defendant's argument that he should have been allowed to argue to the jury the mandatory minimum sentence consequences of a finding that the unloaded BB gun was a dangerous weapon. *Id.*

[¶ 11] *Clinkscales* is inapposite to the present case because there the jury was required to decide whether the defendant used a dangerous weapon or a firearm, both of which would have subjected the defendant to a mandatory minimum sentence. *See* 1993 N.D. Sess. Laws ch. 128, § 2. Although N.D.C.C. § 12.1–22–01(2) at the time also made the crime a class B felony if the defendant pretended to possess a firearm or dangerous weapon during a robbery, this Court did "not consider the pretext element here because Clinkscales was charged with the actual possession of a dangerous weapon." *Clinkscales*, 536 N.W.2d at 664 n.1. In this case, the jury was instructed that the defendant would be guilty if he "willfully possessed or pretended to possess" a firearm or other dangerous weapon. The jury could have found Watkins guilty of pretending to possess a firearm, which would not trigger the mandatory minimum sentence requiring "possession" of a firearm. It was error to not ask the jury to determine whether Watkins possessed a firearm, thereby resulting in the imposition of a mandatory minimum sentence without a specific finding by the jury that Watkins did possess a firearm.

[¶ 12] This Court has recognized three categories of error that arise in criminal cases when the alleged error has not been raised in the district court: forfeited error, waived error, and structural error. "Forfeiture is the failure to timely assert a right, while waiver is the intentional relinquishment of a right, and [N.D.]R.Crim.P. 52(b) applies only to 'forfeited' and not to 'waived' errors." *State v. Olander*, 1998 ND 50, ¶ 14, 575 N.W.2d 658; *see also State v. White Bird*, 2015 ND 41, ¶ 23, 858 N.W.2d 642; *State v. Newman*, 2007 ND 148, ¶¶ 12–13, 738 N.W.2d 887; *State v.*

*Kautzman*, 2007 ND 133, ¶ 17, 738 N.W.2d 1; *State v. Flanagan*, 2004 ND 112, ¶ 14, 680 N.W.2d 241; *State v. Ash*, 526 N.W.2d 473, 484 (N.D. 1995) (Neumann, J., concurring specially); *State v. Frey*, 441 N.W.2d 668, 670–71 (N.D. 1989). Structural errors, however, are constitutional errors "so intrinsically harmful as to require automatic reversal" regardless of whether they have been forfeited or waived. *Neder v. United States*, 527 U.S. 1, 7, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *see also White Bird*, at ¶ 24.

[¶ 13] Neither *Apprendi* nor *Alleyne* errors constitute structural errors requiring automatic reversal. *See, e.g., Washington v. Recuenco*, 548 U.S. 212, 222, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006); *United States v. King*, 751 F.3d 1268, 1279 (11th Cir. 2014); *United States v. Lara–Ruiz*, 721 F.3d 554, 557 (8th Cir. 2013); *State v. Payan*, 277 Neb. 663, 765 N.W.2d 192, 204 (2009); *State v. Ochoa*, 341 P.3d 942, 943–44 (Utah Ct. App. 2014). Rather, these errors may be waived through the doctrine of invited error. *See, e.g., United States v. Solis*, 299 F.3d 420, 452–53 (5th Cir. 2002); *People v. Davis*, 36 Cal.4th 510, 31 Cal.Rptr.3d 96, 115 P.3d 417, 456 (2005); *State v. Andrews*, 220 Or. App. 374, 185 P.3d 1127, 1128–29 (2008).

[¶ 14] This case does not involve a forfeited error. The issue about the verdict form and the mandatory minimum sentence question was discussed by the parties before, during, and after the trial. Watkins agreed to leave the question off the verdict form as a matter of trial strategy. This error was waived, and the obvious error analysis under N.D.R.Crim.P. 52(b) does not apply. *See State v. Brewer*, 2017 ND 95, ¶ 5, 893 N.W.2d 184 (waiver occurred where counsel stated "no objection" to admission of evidence); *White Bird*, 2015 ND 41, ¶ 26, 858 N.W.2d 642 (defendant's trial strategy to introduce evidence about which he now complains was not subject to obvious error analysis); *Kautzman*, 2007 ND 133, ¶¶ 16–17, 738 N.W.2d 1 (defendant's active participation in drafting verdict form led court to submit case as a sentence enhancement case and defendant could not claim obvious error for the court to treat it as such). Watkins may not seek reversal based on an error he invited.

### III.

[¶ 15] We affirm the criminal judgment.

[¶ 16] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte